## MUELLER v. NUGENT.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH
CIRCUIT.

No. 257. Argued and submitted November 13, 1901. — Decided January 20, 1902.

Referees in bankruptcy exercise much of the judicial authority of the court
of bankruptcy, and may enter orders to show cause subject to revision by
the District Court.

Commitment until assets of a bankrupt are surrendered pursuant to order
does not constitute imprisonment for debt.

The bankruptcy court has power to compel the surrender of money or other
assets of the bankrupt in his possession, or that of some one for him, on
petition and rule to show cause.

The filing of a petition in bankruptcy is a *caveat* to all the world, and in
effect an attachment and injunction, and on adjudication and qualifica-
tion of trustee, the bankrupt's property is placed in the custody of the
bankruptcy court, and title becomes vested in the trustee.

The refusal to surrender property of the bankrupt does not in itself create
an adverse claim at the time the petition is filed.

EDWARD B. NUGENT was adjudicated a bankrupt March 23,
1900, on the petition of the Wayne Knitting Mills and others,
his creditors, filed in the District Court of the United States for
the District of Kentucky, February 19, 1900, and the matter
was referred to a referee. Arthur E. Mueller was appointed
trustee of the bankrupt's estate, and on the seventh of April he
obtained an order from the referee requiring the bankrupt to

show cause why he should not pay over the sum of $14,233.45, made up of two items of $4133.45 and $10,100. The response of the bankrupt was held insufficient; he was ordered to pay over; on failure to do so, was adjudged guilty of contempt, and the matter was reported to the court by the referee with a recommendation that he be committed. On the suggestion that approaching senile imbecility made the bankrupt an unfit subject of punishment the court discharged him, without prejudice to a renewal of the matter before the referee if subsequent developments rendered it proper.

April 13, 1900, the trustee filed his petition praying that an injunction might be issued against William T. Nugent, restraining him from disposing of the sum of $14,435.45, or any part thereof, belonging to the estate of the bankrupt, and for an order requiring him to pay the money to the trustee. This petition stated that William T. Nugent was in hiding. The referee granted the injunction and entered an order that said William T. Nugent show cause within five days from service thereof why he should not be required to pay over.

A copy of this order was served on William T. Nugent, October 8, 1900, and on October 13 he appeared in person and by counsel, and filed a response to the rule. In this respondent set forth that "neither the court or the referee in bankruptcy herein, has any jurisdiction either of this respondent or the matter involved, to make any order or to require this respondent to answer thereto, because he says that said records herein show, that, if respondent received said money or any part thereof, it was before the petition in bankruptcy was filed, and in that event neither the court or the referee in bankruptcy can proceed against this respondent as herein attempted by order or rule to pay, and he now hereby asks that this be taken as his response herein, and that said order be set aside and vacated. He says that at no time since the filing of the petition in bankruptcy herein, has he received said $14,435.45 or any part thereof."

For further response he said that he had been indicted in the District Court for receiving said $14,435.45, after the filing of the petition, and with retaining the same, and aiding and

abetting in the retention thereof, both after the filing and the adjudication, for the purpose of defeating the bankrupt law, and that he ought not to be required to respond, and his response would tend to incriminate him.

The matter came on for hearing October 16, it being stipulated, without prejudice to the objection to the jurisdiction, that the depositions of Edward B. Nugent, and others named, (not including William T. Nugent,) theretofore taken in the cause, might be read. The referee summarized the evidence, as appears from his certificate, thus:

" The testimony shows, and I so find, that on the 9th day of February, 1900, the bankrupt, Edward B. Nugent, borrowed from George L. Erbach and Frank Hohmann, executors, the sum of $4500, and as security therefor executed a mortgage upon the house and lot of land owned by said Edward B. Nugent, in the city of Louisville; that after paying the taxes and expenses of procuring the loan there remained from said sum so borrowed the sum of $4133.45; that on said day the said balance of $4133.45 was delivered to said W. T. Nugent as the agent of the bankrupt, and the said amount has not been accounted for to the trustee in bankruptcy herein.

" I further certify that on the 19th day of February, 1900, before the hour of 2 o'clock P. M., being more than three hours before the petition praying for an adjudication of said Edward B. Nugent as bankrupt was filed in the clerk's office of said court, the stock of merchandise belonging to the bankrupt was sold to one Hermann Straus for the sum of $12,000, and on said 19th day of February, 1900, and before the hour of 2 o'clock P. M., the said $12,000 was paid to said bankrupt by said Hermann Straus, in the form of a check on the German Bank of Louisville, Ky.; that said bankrupt endorsed his name across the said check and delivered the same to said W. T. Nugent, his son, as his agent; that said W. T. Nugent received the cash upon said check on that day before the hour of 2 o'clock P. M., and paid therefrom the sum of $1900 for rental on the building where said stock was located and the expenses of making the sale, leaving the sum of $10,100, which then and there still remained in the hands of said W. T. Nugent as the agent of said bankrupt.

" I further find that both of said balances, to wit, $4133.45 and $10,100, belonged to the said bankrupt and became and still are the property of Arthur E. Mueller, trustee in bankruptcy in this cause, and that said W. T. Nugent holds the same as agent or bailee only, and that he has not accounted for any part of said sums."

The referee entered an order on the same day, October 16, 1900, omitting preliminary recitals, as follows:

" And after hearing counsel, now therefore it is ordered and adjudged that the said response to the rule aforesaid be and the same is hereby held insufficient ; and it appearing from the evidence in this cause that there came to the hands of W. T. Nugent $4133.45, being the net proceeds realized from the mortgage executed by the bankrupt upon his house and lot in the city of Louisville, and that there also came to the hands of said W. T. Nugent the further sum of $10,100, being the net proceeds from the sale of the stock of merchandise sold to Herman Straus—the first of said sums having come to the hands of said W. T. Nugent as the agent of the bankrupt on February 9th, 1900, and the second sum, to wit, $10,100, having come to the hands of the said W. T. Nugent as the agent of the bankrupt on February 19th, 1900, before the hour of 2 o'clock P. M., on said day, and it further appearing that the petition of the Wayne Knitting Mills and others, praying that the said Edward B. Nugent may be adjudged a bankrupt, was filed in the office of the clerk of the above-styled court on February 19th, 1900, at 5 o'clock P. M., and it appearing that said W. T. Nugent has failed to pay over said sums, or any part thereof, to the trustee in bankruptcy herein, and that said sums are the property of the bankrupt, Edward B. Nugent, and belong to said trustee as part of said estate, it is ordered that said rule be and the same is hereby made absolute to the amount of said two sums aggregating the sum of $14,233.45.

" It is further ordered that said W. T. Nugent be and he is hereby required to pay to Arthur E. Mueller, trustee in bankruptcy in this cause, on or before 9:30 o'clock A. M. on October 17th, 1900, the said aggregate sum of $14,233.45."

Thereupon, October 17, William T. Nugent filed his petition

that the order of October 16 might be reviewed by the District Judge, and the referee made his certificate of the proceedings and the foregoing summary of the evidence, the depositions put in before him being returned therewith, concluding : " And the said question, to wit, the validity of the said order of October 16th, 1900, above set forth in full, is certified to the judge for his opinion thereon."

The referee also reported that William T. Nugent had failed to comply with the order in whole or in part ; that he was in contempt of court ; and recommended " that he be punished for contempt and committed to prison until he shall have paid to the said trustee the said sum of $14,233.45."

The record of the District Court shows that on the 1st day of November the cause came on to be heard on the petition of William T. Nugent for a review of the order of court entered by the referee requiring said Nugent to pay over, and the certification of the referee, and his recommendation that said Nugent be punished for contempt, and that the court being fully advised delivered a written opinion, which was ordered filed, whereupon William T. Nugent moved the court to postpone the entry of judgment until November 3, and it was so ordered.

The District Judge stated the facts at length ; pointed out that the response was put upon two grounds, namely, that the court and referee were without jurisdiction, and that respondent had been indicted ; held that as to the indictment, it was not an indictment for disobedience to the order, but under § 29 of the bankrupt act ; that exculpation could not criminate ; that he could have denied receiving or concealing the money, or paid it into court, but he had done neither ; that he had the money and that it belonged to the estate ; that the response really rested on the denial of jurisdiction ; and that the referee had the power to order the money to be surrendered. The matter was summed up in these words :

" The respondent has the money in his hands as agent or bailee only. His possession is that of his principal. His principal was his father, up to a certain stage of these proceedings ; but whether up to the filing of the petition, or up to the adjudication, we need not stop to inquire, as it is immaterial in this

case. At one or the other of those times his principal, by operation of law, was changed, and an officer of this court was substituted for his father. That change in no way lessened the duty of paying the money to the proper principal upon notice and demand. After the change, however, the money was potentially in the custody of the law in these proceedings, and subject to the orders of the court. The rule and its service constituted sufficient notice and demand. The order made was that the respondent should pay the money to the proper officer. Disobedience of that order is made punishable as a contempt by the express provisions of the act.

" The court, therefore, has jurisdiction of the person and of the subject matter. The rulings of the referee appear to be right, and are approved and confirmed, and his recommendation as to punishing the respondent for the contempt adjudged will be acted upon with appropriate vigor. . . .

" The judgment of the court, in the exercise of its statutory discretion, will be that the respondent, W. T. Nugent, for his contempt aforesaid, be imprisoned in the county jail until he shall deliver to Arthur E. Mueller, the trustee, said sum of $14,233.45, and the court will reserve the right to suspend or set aside this judgment and sentence upon the delivery and payment of the money as ordered." *Wayne Knitting Mills* v. *Nugent*, 104 Fed. Rep. 530.

On the third of November the respondent Nugent asked leave to file an amended response, stating that he had not made full response as to the entire facts because the referee had held he could not be examined as to transactions involved in the indictment, and denying that the $14,233.45, or any part thereof, was now in his possession or under his control, or was on October 8, 1900, and saying " that neither at the time of the filing of the petition in bankruptcy herein against E. B. Nugent, or at any time subsequent thereto, did he have in his hands any amount of money belonging to said Nugent which he held as his agent or bailee. He says that whatever money came to his hands on February 19, 1900, belonging to said E. B. Nugent, or any such money at any subsequent date thereto, was not received or held by this respondent as agent or bailee, or in any

trust capacity whatever, but was held adversely to said E. B. Nugent."

The District Court would not permit the proposed amendment to be filed, and entered this order:

"Came William T. Nugent, respondent herein, and tendered an amended response, and moved to file same, and the court not having postponed the imposing of the sentence for that purpose, and being of opinion that it is not discreet or admissible practice to permit amendments upon hearings such as this, especially after the delivery of an opinion of the court, declines at this stage of the proceedings to permit a further response to be filed.

"And thereupon, pursuant to the opinion of the court, filed herein on the 1st instant, it is the judgment of the court that William T. Nugent, for his contempt aforesaid, be imprisoned and confined in the county jail of Jefferson County, Kentucky, until he shall deliver or pay to Arthur E. Mueller, the trustee herein, said sum of $14,233.45, or otherwise satisfy the said trustee with respect thereto, and the court reserves the right and power to suspend or set aside the judgment and sentence upon the delivery, payment or satisfaction aforesaid."

Thereafter William T. Nugent filed a petition for review, under subdivision *b*, section 24, of the act, in the Circuit Court of Appeals, praying "that the orders, judgments, and sentence of the District Court be reviewed and revised in the matters of law, so as to adjudge that your petitioner be released and discharged," or "that he be permitted to further respond in said matter."

This petition alleged error in that the District Court held that the referee and the court had jurisdiction to proceed against petitioner in a summary way; that the court had jurisdiction on the proceedings and recommendations of the referee to punish petitioner for contempt; that the referee had power to grant the injunction against petitioner, or to proceed on rule to show cause; that the response was insufficient; that the facts were that the money belonged to the bankrupt's estate and was held by petitioner as the bankrupt's agent, and was not claimed adversely; that the amended response should not

be filed; that the petitioner was properly before the court; and that the contempt proceedings should not be dismissed and petitioner discharged.

The amended response was attached as an exhibit to this petition, although it had not been filed in the District Court or made part of the record there by certificate of exceptions or order of identification, and the petition also set up several matters and exhibits which apparently were not before the referee or the District Court in the proceeding. The trustee moved to expunge these various matters and exhibits.

To expedite the hearing this motion was reserved, and it was stipulated that " such affirmative allegations of said petition for review as properly should be denied be treated as controverted of record without prejudice to the hearing of said motion."

The Circuit Court of Appeals, December 13, 1900, filed a memorandum opinion, and entered judgment reversing the decree of the District Court, with directions to that court to vacate the order of the referee on respondent to show cause and his order adjudging respondent to be in contempt thereof, and that respondent be discharged from imprisonment. An extended opinion was subsequently filed. 105 Fed. Rep. 581.

The writ of certiorari was then granted by this court. 180 U. S. 640.

*Mr. William W. Watts* for Mueller. *Mr. John Richard Watts* was on his brief.

*Mr. W. M. Smith* for Nugent submitted on his brief, on which was also *Mr. Fred. Forcht, Jr.*

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

General order in bankruptcy XXVII (172 U. S. 662), provides: " When a bankrupt, creditor, trustee, or other person shall desire a review by the judge, of any order made by the referee, he shall file with the referee his petition therefor, setting out the error complained of; and the referee shall forthwith

certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon."

Respondent accordingly filed his petition for a review of the order of October 16. The referee thereupon certified to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon. He pursued in so doing Form No. 56 of the Forms in Bankruptcy. 172 U. S. 718. The question certified was "the validity of the said order of October 16, 1900, above set forth in full." At the same time the referee reported the disobedience of William T. Nugent and recommended that he be committed. No exception was taken before the referee or the District Court to the sufficiency of the trustee's application, or to the adequacy of the certificate, and the entire evidence was transmitted.

Subdivision *b* of section 24 of the act of July 1, 1898, c. 541, 30 Stat. 544, 553, provides: "The several Circuit Courts of Appeals shall have jurisdiction in equity, either interlocutory or final, to superintend or revise in matter of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction."

The District Court affirmed the order of October 16, and ordered respondent to be committed for his failure to comply therewith, and thereupon respondent filed in the Circuit Court of Appeals his petition for review. The matters of law to be passed on by that court were the validity of the order of October 16, as affirmed by the District Court, and the correctness of the order of commitment. And these were to be determined on the record of the District Court.

The Circuit Court of Appeals had in prior cases recognized the general proposition that those courts are confined on petitions for review to matters of law arising on the record of the courts below, and may well have assumed that there was no necessity for a specific ruling on the motion to expunge the new matter accompanying the petition in this instance. *Cunningham* v. *German Insurance Bank,* 103 Fed. Rep. 932; *Courier-Journal Printing Co.* v. *Schaefer-Meyer Brewing Co.,* 101 Fed. Rep. 699. The record of the District Court in respect of the

order of October 16 was the record made before the referee, who had certified the question of the validity of the order at the request of respondent, and to the adequacy of whose certificate respondent had made no objection as heretofore said.

It is true that after the decision of the District Court was announced, and the final order was about to be entered, the entry of the order was suspended, on the application of the respondent, for two days, and that then the respondent undertook, by way of amendment, to set up a denial that he held the money as the bankrupt's agent, or bailee, and to assert that he held adversely to him. The District Court refused to allow the amendment to be made at that stage of the proceedings, and we do not understand that the Court of Appeals held that the District Court abused its discretion in so refusing.

At an earlier stage perhaps this ruling might have been controlled by the rules of equity practice adopted by this court, but that would not be so after hearing had been had, the decision of the court had been announced, and judgment was about to be entered.

The respondent had denied the jurisdiction on the ground that he had not received the money, or any part of it, after the petition in bankruptcy was filed. When the matter came on to be heard on the rule to pay over, respondent agreed that the enumerated depositions might be read, reserving his exceptions to the jurisdiction. He then carried the matter to the District Court, and after it was decided, sought to amend his response to the rule by asserting that whatever money belonging to the bankrupt came to his hands was not received as agent of but was held adversely to the bankrupt. He did not even then set forth what money he had received, and how and when it came to his hands, or the circumstances under which he claimed to hold it adversely, but put forward simply a conclusion of law. The District Court held it not admissible practice to permit such an amendment at that stage, that is, that the application came too late, after the case had been heard and determined and a written opinion had been delivered and filed; and the District Judge may have considered it a mere subterfuge in evasion of the effect of the decision, or that the proposed amendment was insufficient.

If the proposed amended response be treated as properly before us, we agree that the orders under consideration ought not to be disturbed because of this ruling made in the competent exercise of judicial discretion. And, moreover, respondent did not ask to plead over before the referee, but had the case certified to the judge as it stood.

Among the definitions set forth in section 1 of the bankruptcy act are these: " 'Court' shall mean the court of bankruptcy in which the proceedings are pending, and may include the referee;" " 'judge' shall mean a judge of a court of bankruptcy, not including the referee; " " 'referee' shall mean the referee who has jurisdiction of the case or to whom the case has been referred, or any one acting in his stead."

By section 2, courts of bankruptcy are vested with power to "(6) bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy; (7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided; (10) consider and confirm, modify or overrule, or return, with instructions for further proceedings, records and findings certified to them by referees; (13) enforce obedience by bankrupts, officers, and other persons to all lawful orders, by fine or imprisonment, or fine and imprisonment; (15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act; (16) punish persons for contempts committed before referees."

Section 36 provides that "referees shall take the same oath of office as that prescribed for judges of United States courts."

Section 38, that referees shall have jurisdiction to "(4) perform such part of the duties, except as to questions arising out of the applications of bankrupts for compositions or discharges, as are by this act conferred on courts of bankruptcy and as shall be prescribed by rules or orders of the courts of bankruptcy of their respective districts, except as herein otherwise provided."

And section 39, that among other duties of referees, they

shall "(5) make up records embodying the evidence, or the substance thereof, as agreed upon by the parties in all contested matters arising before them, whenever requested to do so by either of the parties thereto, together with their findings therein, and transmit them to the judges."

Section 41 provides that "a person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process, or writ;" and that "*b* The referee shall certify the facts to the judge, if any person shall do any of the things forbidden in this section. The judge shall thereupon, in a summary manner, hear the evidence as to the acts complained of, and, if it is such as to warrant him in so doing, punish such person in the same manner and to the same extent as for a contempt committed before the court of bankruptcy, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of, or in the presence of, the court."

General Order XII provides that after the order of reference reaches the referee, "all the proceedings, except such as are required by the act or by these general orders to be had before the judge, shall be had before the referee."

General Order XXIII is: "In all orders made by a referee, it shall be recited, according as the fact may be, that notice was given and the manner thereof; or that the order was made by consent; or that no adverse interest was represented at the hearing; or that the order was made after hearing adverse interests."

And we repeat General Order XXVII: "When a bankrupt, creditor, trustee, or other person shall desire a review by the judge of any order made by the referee, he shall file with the referee his petition therefor setting out the error complained of; and the referee shall forthwith certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon."

No objection was made before the referee or the District Court, to the authority of the referee as such, to entertain these proceedings; to enter the order to show cause and thereby to bring in William T. Nugent; and to enter the order of Octo-

ber 16; and we do not find that the act or the general orders
are to the contrary.

It is now said that the only power the referee has to direct
the taking possession of property is given by subsection three
of section 38*a*, providing that the referee may exercise the
powers of the judge in that respect on a certificate of the clerk
that the judge is absent or unable to act. But that provision
seems to refer only to the seizure of property by the marshal
or a receiver prior to adjudication and the qualification of the
trustee as provided by section 2, section 3*e*, and section 69, and
it is at all events inapplicable here.

We think the referee has the power to act in the first in-
stance in matters such as this, when the case has been referred,
and in aid of the court of bankruptcy, and exercises in such
cases " much of the judicial authority of that court." *White* v.
*Schloerb*, 178 U. S. 542. By petition for review the matter
can be carried to the bankruptcy court and the entire record
and findings laid before that tribunal as was done here.

And if the order of October 16 was in itself a lawful order,
the power of the District Court to commit William T. Nugent
until he surrendered the money to the trustee, or otherwise
satisfied the trustee with respect thereto, was unquestionable
under the express provisions of the bankruptcy act in that be-
half, as well as the general jurisdiction of the court to enforce
its orders in the collection of assets.

It is objected that the order of commitment was invalid be-
cause it did not run in the name of the United States. This
objection was not made below; nor was this an attachment.
It was an order to detain Nugent until he complied with an
order made in a proceeding in equity under the bankrupt act.
The objection is untenable. Nor was the commitment impris-
onment for debt, as also contended. The order to pay over
the money was not an order for the payment of a debt, but an
order for the surrender of assets of the bankrupt placed *in cus-
todia legis* by the adjudication.

The real question was whether the order of October 16, as
confirmed by the District Court, was a lawful order. It was
to be determined as a mere question of law on the facts found

that the money belonged to the bankrupt's estate, and was then in Nugent's possession as the bankrupt's agent, he asserting no adverse claim. And the question of the validity of that order involved the validity of the order to show cause.

The proposition was that, as matter of law, where property of a bankrupt has come into the hands of a third party before the filing of the petition in bankruptcy, as the agent of the bankrupt, and to which he asserts no adverse claim, the bankruptcy court has no power by summary proceedings to compel the surrender of the property to the trustee in bankruptcy duly appointed.

In other words, the question reduces itself to this: Has the bankruptcy court the power to compel the bankrupt, or his agent, to deliver up money or other assets of the bankrupt, in his possession or that of some one for him, on petition and rule to show cause? Does a mere refusal by the bankrupt or his agent so to deliver up oblige the trustee to resort to a plenary suit in the Circuit Court or a state court, as the case may be?

If it be so, the grant of jurisdiction to cause the estates of bankrupts to be collected, and to determine controversies relating thereto, would be seriously impaired, and, in many respects, rendered practically inefficient.

The bankruptcy court would be helpless indeed if the bare refusal to turn over could conclusively operate to drive the trustee to an action to recover as for an indebtedness, or a conversion, or to proceedings in chancery, at the risk of the accompaniments of delay, complication, and expense, intended to be avoided by the simpler methods of the bankrupt law.

It is as true of the present law as it was of that of 1867, that the filing of the petition is a *caveat* to all the world, and in effect an attachment and injunction, *Bank* v. *Sherman*, 101 U. S. 403; and on adjudication, title to the bankrupt's property became vested in the trustee, §§ 70, 21 *e*, with actual or constructive possession, and placed in the custody of the bankruptcy court.

There was no pretence that at the date of the filing of this petition in bankruptcy this money of the bankrupt, $4133.45 of which had been collected a few days, and $10,100, a few

hours, before, was held subject to any adverse claim, or that the right or title thereto had been passed over to another.

The position now taken amounts to no more than to assert that a mere refusal to surrender constitutes an adverse holding in fact and therefore an adverse claim when the petition was filed, and to that we cannot give our assent.

But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt, the bankruptcy court had the power to ascertain whether any basis for such a claim actually existed at the time of the filing of the petition. The court would have been bound to enter upon that inquiry, and in doing so would have undoubtedly acted within its jurisdiction, while its conclusion might have been that an adverse claim, not merely colorable, but real even though fraudulent and voidable, existed in fact, and so that it must decline to finally adjudicate on the merits. If it erred in its ruling either way, its action would be subject to review.

In this case, however, respondent asserted no right or title to the property before the referee, and the circumstances under which he held possession must be accepted as found by the referee and the District Court.

The decisions of this court under the present law sustain the validity of the action we are considering.

In *Bardes* v. *Hawarden Bank*, 178 U. S. 524, the question related to the jurisdiction of the District Court over suits brought by trustees in bankruptcy to set aside fraudulent transfers of money or property made by the bankrupt to third parties before the institution of proceedings in bankruptcy. The court said: "Had there been no bankruptcy proceedings, the bankrupt might have brought suit in any state court of competent jurisdiction; or, if there was a sufficient jurisdictional amount, and the requisite diversity of citizenship existed, or the case arose under the Constitution, laws or treaties of the United States, he could have brought suit in the Circuit Court of the United States. He could not have sued in a District Court of the United States, because such a court has no jurisdiction of suits at law or in equity between private parties, except where,

by special provision of an act of Congress, a District Court has the powers of a Circuit Court, or is given jurisdiction of a particular class of civil suits." And it was held that Congress, by the second clause of section 23 of the bankruptcy act, had manifested its intention " that controversies, not strictly or properly part of the proceedings in bankruptcy, but independent suits brought by the trustee in bankruptcy to assert a title to money or property as assets of the bankrupt against strangers to those proceedings, should not come within the jurisdiction of the District Courts of the United States, ' unless by consent of the proposed defendant.' " The court was dealing there with a suit of the trustee against a third party to recover property fraudulently transferred to him by the bankrupt before the filing of the petition in bankruptcy, and which the third party claimed as his own.

In *White* v. *Schloerb*, 178 U. S. 542, where, after an adjudication in bankruptcy and reference of the case to a referee, and before the appointment of a trustee, the referee had taken possession of the bankrupt's stock of goods in a store, a writ of replevin of part of the goods was sued out by third persons against the bankrupt from a state court and executed by the sheriff forcibly entering the store and taking possession of the goods, it was held that the District Court of the United States, sitting in bankruptcy, had jurisdiction by summary proceedings to compel the return of the property seized.

In *Bryan* v. *Bernheimer*, 181 U. S. 188, Abraham, nine days before the filing of a petition in bankruptcy against him, made a general assignment to Davidson of all of his property for the benefit of his creditors. After the filing of the petition Davidson sold the property to Bernheimer. After the adjudication in bankruptcy and before the appointment of a trustee, the petitioning creditors applied to the court for an order to the marshal to take possession of the property, alleging that this was necessary for the interest of the bankrupt's creditors. The court ordered that the marshal take possession, and that notice be given to the purchaser to appear in ten days and propound his claim to the property, or failing to do so, be decreed to have no right in it. The purchaser came in and propounded his claim,

stating that he bought the property for cash in good faith of the assignee, and praying that the creditors be remitted to their claim against the assignee for the price, or that the price be ordered to be paid by the assignee into court and paid over to the purchaser, who thereupon offered to rescind the purchase and waive all further claim to the property. This court held that the summary proceeding was properly entertained; that the purchaser had no title in the property superior to the bankrupt's estate; and that the equities between him and the creditors might be determined by the District Court, bringing in the assignee if necessary. In that case it was observed that the remark in *Bardes* v. *Bank*, that the powers conferred on the courts of bankruptcy after the filing of a petition in bankruptcy, and in case it was necessary for the preservation of the property of the bankrupt to authorize receivers or the marshals to take charge of it until a trustee was appointed, "'can hardly be considered as authorizing the forcible seizure of such property in the possession of an adverse claimant,' was an inadvertence, and upon a question not arising in the case then before the court, which related exclusively to jurisdiction of a suit by the trustee after his appointment." The court also said: "The general assignment, made by Abraham to Davidson, did not constitute Davidson an assignee for value, but simply made him an agent of Abraham for the distribution of the proceeds of the property among Abraham's creditors." And further: "The present case involves no question of jurisdiction over a suit by a trustee against a person claiming an adverse interest in himself."

In the case before us, William T. Nugent held this money as the agent of his father, the bankrupt, and without any claim of adverse interest in himself. If it was competent to deal with Davidson, the assignee in the case of *Bryan* v. *Bernheimer*, by summary proceeding, William T. Nugent could be dealt with in the same way.

The cases are indeed different, for Bernheimer, the purchaser, submitted himself to the jurisdiction of the bankruptcy court and the sale was after petition filed, but nevertheless, so far as the question of subjecting a mere volunteer in possession of as-

sets belonging to the bankrupt's estate to the control of that court by summary proceedings is concerned, the ruling in *Bernheimer's* case is in point.

We are of opinion that the order of October 16 was a lawful order. In arriving at that conclusion we have confined ourselves to the record of the District Court. If in the effort to escape the jurisdiction of the bankruptcy court, that record is not in a condition as favorable to respondent as the actual facts might have justified, he has only himself to thank for it; but, lest any injustice should be done, the judgment will be:

> *Decree of the Circuit Court of Appeals reversed; decree and order of the District Court affirmed; and cause remanded to the latter court with liberty to take such further proceedings as it may be advised.*