CASE 31.—ACTION BY DANIEL E. O'SULLIVAN'S TRUSTEE .IN BANKRUPTCY AGAINST J. J. DOUGLASS AND OTHERS.—January 9.

## O'Sullivan's Trustee v. Douglass

Appeal from Jefferson Circuit Court, Chancery Branch (First Division).

SHACKELFORD MILLER, Judge.

Judgement for defendants. Plaintiff appeals. Reversed.

1. Bankrupts—Salary of City Official—Fraudulent Assignment—. Delaying Creditors.—Under the bankrupt law an assignment by a city official of his salary within four months prior to filing his petition in bankruptcy with intent to hinder or delay his creditors is fraudulent, and in order to protect purchasers three things must concur:    (1) Their own good faith, (2) a consideration passing at the time, and (3) it must be a fair equivalent of the thing purchased.

O'Sullivan's Trustee v. Douglass.

2. Same.—An assignment of his salary by a city official to one who did not pay or agree to pay a consideration therefor, made within four months prior to such assignor's filing his petition in bankruptcy, is void as to the creditors of the assignor, and such salary remains the assets of the bankrupt and passes to his trustee unless exempt to the bankrupt under the laws of this State.

3. Attachment of Salary.—The salary of a city official may be attached for his debts.

4. Prior Adjudication — Absence of Collusion — Conclusiveness of Judgment.—Where the liability of a debtor's salary to the payment of his debts has been adjudicated in a court of competent jurisdiction which was not collusive, the subsequent bankruptcy of the debtor and appointment of his trustee cannot open that question for litigation in the absence of an allegation of collusion in the parties in obtaining the judgment.

WILLIAM W. CRAWFORD and EMILE STEINGFIELD, Attorneys for Appellant.

POINTS AND AUTHORITIES.

1. Salary assigned by a bankrupt within four months prior to the filing of the petition in bankruptcy is recoverable by the trustee in bankruptcy, where no present, fair consideration was given for the assignment. (Section 67, Subsection (e) National Bankruptcy Act.)

2. Salary assigned by a bankrupt with intent to delay, hinder and defraud creditors is recoverable by the trustee from the assignee, even when the latter paid a full consideration, when such intent was known to the assignee or should have been known by him. (Hoffman v. Leslie, 23 Ky. Law Rep., 1982; Carter & Co. v. Richardson, 22 Ky. Law Rep., 1204; Wadsworth v. Williams, 100 Mass., 126; Harrison v. Jacques, 22 Ind., 210; Pulliam v. Newberry's Adm'r, 41 Ala., 171; Robinson v. Holt, 39 N. H., 561; In Re Moody, 134 Fed., 631; Toof v. Martin, 13 Wallace, 40;)

3. Money paid a bankrupt by a debtor after the filing of the petition in bankruptcy is no bar to a suit by the trustee to recover the debt. (Mueller v. Nugent, 184 U. S., page 411; International Bank v. Sherman, 101 U. S., 407; Stevens v. Mechanics' Bank, 101 Mass., 109; Mays v. Manufacturers Bank, 64 Pa. St.)

4. In order to sustain a claim for exemptions, all the require-

O'Sullivan's Trustee v. Douglass.

ments of the Statute must be pleaded and proved, and before money can be set aside as exempt in lieu of articles not on hand, it must be affirmatively shown that none such is on hand. (Lawson v. The S. T. Barlow Co., 21 Ky. Law Rep., 308; Commonwealth (v. Burnett, 19 Ky. Law Rep., 1837.)

WILLIAM FURLONG Attorney for Appellees.

### POINTS AND AUTHORITIES.

A sale or transfer of his monthly salary by an insolvent debtor for a full and valuable consideration is not prohibited by the bankruptcy act. (Law and Proceedings in Bankruptcy, Loveland, pages 384, 389; Stewart v. Platt 101, U. S., 731.)

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—Reversing.

Daniel E. O'Sullivan, an official of the City of Louisville, whose salary was $208.33 per month, being insolvent, and considerably in debt, assigned his salary for the month of January, 1905, to appellees. He did the same for the month of February, 1905, and for the first 22 days of March, 1905. On the last-named date he filed his petition to be adjudged a bankrupt in the United States District Court for the Western District of Kentucky. The assignments of the salary for January and February were made about the last of each month. For March the assignments were made daily. O'Sullivan received nothing contemporaneously with the assignments. But after the salary lists for the months had been allowed by the city and its warrants issued, appellees then paid them to O'Sullivan in full, retaining no commission. A few days after the January salary had been assigned, a creditor of O'Sullivan, William Kelday, having a judgment and execution returned no property found, filed his petition in equity for a discovery of assets. The city was made a defendant. It answered, disclosing that O'Sullivan had previously

assigned his salary for that month to appellees.
Thereupon appellees were made parties defendant,
it being charged that O'Sullivan had assigned the
salary claim to them to hinder and delay his creditors.
They answered, claiming that the assignment to them
was for full value, and that they were innocent pur-
chasers without notice of O'Sullivan's unlawful pur-
pose, if he had such, in assigning it. Upon slight
preparation that case was submitted, and the judg-
ment was rendered in favor of appellees.

When the payments were made by appellees to
O'Sullivan, they knew his creditors had attached;
knew he was insolvent; paid him nothing, and did not
bind themselves to pay him anything, for the salary
claims. They were friends of O'Sullivan, and we
think the record shows their purpose was to aid him
in preventing his creditors from subjecting his salary
to their debts. This was a violation of the bankrupt
statute. Sub-section "e" of section 67 of that statute
(Act July 1, 1898, c. 541, 30 Stat, 564 (U. S. Comp.
St. 1901, p. 3449) reads: "That all conveyances,
transfers, assignments, or encumbrances of property,
or any part thereof, made or given by a person
adjudged a bankrupt under the provisions of this act,
subsequent to the passage of this act and within four
months prior to the filing of the petition, with the
intent and purpose on his part to hinder, delay or
defraud his creditors, or any of them, shall be null
and void as against the creditors of such debtor,
except as to purchasers in good faith and for a pres-
ent fair consideration; and all property of the debtor
conveyed, transferred, assigned, or encumbered as
aforesaid shall, if he be adjudged a bankrupt, and the
same is not exempt from execution and liability for
debts by the law of his domicile, be and remain a part
of the assets and estate of the bankrupt and shall pass

to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors." Where one is insolvent he may sell what he has, of course, but he is not allowed to give it away in prejudice of his creditors' rights. So, people dealing with an insolvent must bear in mind the policy of the law that a man must pay first and give afterwards. If that is true as to gifts, it ought all the more bear good as to sales for less than a fair value. They partake of the nature of gifts in that they were without consideration to the extent that the property exceeds in value what is received for it, but they have not even the graciousness that distinguishes a bestowal by voluntary gift. Fraud enters to vitiate the transaction, for the purpose, in the case of a failing debtor, is, in the eye of the law, to defraud, and the purchaser no less than the seller participates in it—the latter possibly driven by necessity, the former most likely by greed. Each is charged with liability for the act. It is unlawful and is denounced by the statutes of the United States and of the State. But where one, to enable a failing debtor to conceal his assets to defeat his creditors, pays full value for the article having notice of the fraudulent purpose—for that is what the statute deems it to be—he violates the statute. Huffman v. Leslie, 66 S. W. 822, 23 Ky. Law Rep. 1982. It should be marked that purchasers who are protected by this statute are those who act in good faith and pay a present fair consideration. Three things must concur to protect them: (1) Their own good faith; (2) a consideration passing at the time of their purchase; and (3) it must be a fair equivalent of the thing purchased. Here appellees were not purchasers in good faith, nor did they pay a present consideration for the thing purchased. They did not then pay anything, or

bind themselves to pay anything at all events. Their purchases were void as to creditors of O'Sullivan. And furthermore, under the statute, the thing so dealt in remains assets of the bankrupt, and passes to his trustee, whose duty it is to reclaim and recover the asset, unless it was exempt to the bankrupt under the laws of the State.

The salary for February assigned to appellee passed to the trustee upon the debtor's becoming bankrupt within four months thereafter, and it should have been adjudged to appellant, although it had been previously paid over to the debtor by his assignee.

As to the March salary (that part earned prior to the filing of the petition in bankruptcy), it was not paid to O'Sullivan till after he filed his petition in bankruptcy. Nor had appellee then paid him anything on it, although it had been frequently assigned by the debtor to appellees. But whether it was owing by the city or appellees to O'Sullivan, it passed to the trustee in bankruptcy upon the filing of the petition, and neither could subsequently pay it save to the trustee so as to discharge the liability. Appellees in fact collected it from the city. They then held it as the property of the trustee, and should have paid it only to him. The rule on this subject is thus laid down in International Bank v. Sherman, 101 U. S. 407, 25 L. Ed. 866 (and confirmed recently in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405): "The filing of the petition was a caveat to all the world. It was, in effect, an attachment and injunction. Thereafter all the property rights of the debtor were ipso facto in abeyance until the final adjudication. Those who dealt with his property in the interval between the filing of the petition and the final adjudication did so at their peril."

Nor was O'Sullivan entitled to any of this money or property as an exemption, so far as this record shows. It is true, he testified that he was a citizen of this Commonwealth, with a family of three persons. But he did not show what other property he had. In order for this to have been exempt, he would have had to show that he was entitled to it under the statute in lieu of something else that was specifically exempt, but was not on hand, and for which the law allowed a substitution. Money is not exempt under the statute; neither is a chose in action. Certain enumerated articles are exempt, including enough provisions to support the family of the debtor for one year, but, if not on hand,, then other property to the value of not exceeding $40 for each member of the family may be set apart to make up the deficiency of exempt provis· ions. There is no evidence in the record as to what provisions this debtor had on hand, or as to what other personal property he then had; nothing to entitle him to the exemption in this case, beyond the fact that he was a resident with a family and said he needed this money to keep them up. Furthermore, there was no plea of exemption in the case. True, O'Sullivan pleaded that his salary was exempt from attachment or execution, because the salary of a public official could not be attached. ˙ This was upon the supposed ground that public policy forbids the attachment of such salaries. And, if true, it would be so without reference to what property such debtor-official may have owned. But the proposition is not true. The salary of a city official may be attached for his debts. Bridgeford v. Keenehan, 8 Ky. Law Rep. 268; Speed v. Brown, 10 B. Mon. 109; Rodman v. Musselman, 12 Bush, 355, 23 Am. Rep. 724. There was no plea of exemption on the ground that the debtor had

not enough provisions on hand to support his family one year. There was, therefore, neither pleading nor proof to support an adjudication of any exemption in his favor.

The court is of the opinion that, for the salary of February ($208.33), and for March up to the filing of the petition in bankruptcy $152.70), the trustee is entitled to recover of appellees. But for the January salary a different question is presented: The liability of appellees to account to O'Sullivan, and to his cred- itor, Kelday, for this sum on the ground that it did not belong to appellees, had been litigated in a court of competent jurisdiction, and adjudged in favor of appellees. The litigation was not collusive. The judgment of the court settled the title to this fund as between the parties, and decided the identical ques- tions of fraud, valuable consideration, and notice of the debtor's intent that are involved in this case. We think the judgment is conclusive. Ordinarily one judgment is not a bar to another proceeding unless it not only presents the same subject-matter of the litigation, or cause of action, but is between the identi- cal parties and in the same right. Appellant, the trustee, was not a party to the Kelday suit, but the bankrupt was. There was then no trustee in bank- ruptcy; hence the title was in the bankrupt himself. The judgment of the court divested him of it—at least adjudged that he did not have it and that appellee did. The subsequent bankruptcy of the debtor and appointment of his trustee cannot open up that question for litigation again, in the absence of an allegation of collusion among the parties to obtain the former judgment in the State court. The trustee is a privy in the estate to the debtor, and takes his property subject to such rights as the debtor himself had, barring his own frauds.

Wherefore, the judgment of the circuit court is reversed, and cause remanded, with directions to enter judgment in conformity herewith.

Whole court sitting except JUSTICE BARKER.