## In re L. B. PICKENS & BRO.

(District Court, N. D. Georgia. January 23, 1911.)

No. 308.

BANKRUPTCY (§ 209*)—CLAIMS TO PROPERTY—DETERMINATION—PLENARY SUIT
  —PARTIES.

    Where a bankrupt, having borrowed money from A., executed a deed
to certain real estate to him, receiving back a bond for title, and there-
after transferred the bond to his aunt, to whom he was indebted, and it
was doubtful whether such transfer was an absolute assignment or as se-
curity, the determination of that question could not be had in a sum-
mary proceeding to compel the bankrupt to turn over the property to his
trustee, in which the aunt was not a party, but could only be determined
in a plenary suit.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 318; Dec.
Dig. § 209.*]

In the matter of bankruptcy proceedings of L. B. Pickens & Bro.
On petition to review a referee's order requiring the bankrupt to turn
over certain property, in which it was alleged he had an equity of re-
demption, to his trustee. Reversed, with directions to dismiss.

Lipscomb, Willingham & Doyal, for trustee.
Max Meyerhardt, for petitioner.

NEWMAN, District Judge. This case is in a rather peculiar situa-
tion, and I have had some difficulty in knowing how to dispose of it.
L. B. Pickens, one of the bankrupt firm, it is claimed, owned a small
tract of land in Cobb county, which he did not turn over to the trus-
tee in bankruptcy. A petition was filed by the trustee, W. B. Everett,
asking the bankruptcy court to require L. B. Pickens to surrender the
land in question to him, as trustee in bankruptcy for the firm of L.
B. Pickens & Bro. The referee in bankruptcy at Rome issued a rule
requiring L. B. Pickens to show cause why he should not turn over
the land, and it seems that Pickens appeared and made a general de-
nial of his ownership of the land.

There was a hearing before the referee, and it appeared that Pick-
ens owned the land in April, 1908, when he borrowed $200 from J.
T. Echols, making him a deed to this land, and receiving back a bond
for title. Subsequently, in April, 1909, he paid Echols $50 principal
and $16 as interest, and, it seems, still owes him the remainder. On
April 6, 1909, L. B. Pickens seems to have transferred the bond for
title to Miss E. A. Pickens, his aunt, to whom both L. B. Pickens and
Miss Pickens testified he was indebted at that time. There seems some
doubt from the evidence whether the transfer from Pickens to his
aunt was a transfer to secure his indebtedness to her, or an absolute
transferring of the bond for title.

The referee, after hearing the evidence, found that the land should
be turned over to the trustee, and that the land should be sold by
the trustee, subject to the right of Echols to have the balance of his
debt paid, and subject to whatever debt is due Miss Pickens. To this

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

report of the referee L. B. Pickens filed exceptions, and asked that the matter be brought before the District Court for review. He denies, in the paper that he files, that the referee found correctly, and says that he erred in his decision. He then says:

"Wherefore petitioner prays that the issues of fact in the foregoing case be submitted to a jury in said court."

The referee, in the course of his findings in this case, says:

"There seems to have been some uncertainty as to whether L. B. Pickens meant by the transfer of the bond for title to give all his interest in the property to his aunt, or whether, upon the payment of the amount he owed her he was to receive the property back."

This indicates, and it is shown all through the case, that there was a clear assertion of right to the property on the part of Miss Pickens. There can be little doubt that there was error in the referee undertaking to dispose of this matter under a rule to show cause, and by a summary proceeding like this to require that the land be turned over to the trustee in bankruptcy. In the first place, so far as I can see, Miss Pickens was not a party to this proceeding at all, and the evidence indicates, as well as the findings of the referee, that she was the person who was claiming the land.

The appearance and pleadings in opposition to the trustee all seem to be by L. B. Pickens. However, there does not seem to have been, up to the time of the recent demand for jury trial, any objection to the right of the referee to hear the matter. If the trustee has rights in this matter, the same should, undoubtedly, have been asserted by plenary suit in the proper court. This is clearly evidenced by the decisions in Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, and Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405.

In a case decided by Judge Jones in the Northern District of Alabama—In re Tune (D. C.) 115 Fed. 906—the judge draws from the decisions just referred to the rule on this subject as follows:

"It is apparent from reading the opinion in Nugent's Case that the only adverse claim which could oust the summary jurisdiction was a claim which was not merely colorable. To use its language again, there must be an 'actual basis' for the claim. This is only the application of the familiar principle regarding equity jurisdiction in cases where it is essential to injunctive relief to have a superior legal title or right to the defendant. A bare claim, a bare denial of the plaintiff's right, no matter how positive, will not dissolve the injunction; but the defendant must go further, and show facts in support of the denial, which at least give color of right in him, and make the contested matter of right between him and the complainant one of some fair doubt. There must be reasonable room for controversy."

The ninth headnote to this case, which is a summary of what is held, is in this language:

"The summary jurisdiction is ousted, if determination of the validity of the adverse claim involves the decision of matters in pais and the weighing of conflicting evidence and finding of facts, which, when presented, leave room for fair doubt as to the invalidity of the claim, since such a claim is not merely colorable. Delivery must then be compelled by suit in plenary proceedings in a proper court."

·. On this question of the right of the bankruptcy court to proceed summarily, and whether a plenary suit is necessary, this is said in the opinion in. Mueller v. Nugent, 184 U. S. at page 15, 22 Sup. Ct. at page 275, 46 L. Ed. 405:

"But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt. The bankruptcy court had the power to ascertain whether any basis for such claim actually existed at the time of the filing of the petition. The court would then have been bound to enter upon the inquiry, and in so doing would have undoubtedly acted within its jurisdiction, while its conclusion might have been that an adverse claim, not merely colorable, but real, even though fraudulent and voidable, existed in fact, and so that it must decline to finally adjudicate on the merits. If it erred in its ruling either way, its action would be subject to review."

So that, if the claim is "real," and not "merely colorable," the claimant of the property, as against the trustee in bankruptcy, is entitled to have his rights determined by a plenary proceeding, and not by summary proceeding instituted before the referee in bankruptcy.

If Miss Pickens had been made a party to this proceeding, and had appeared, as did L. B. Pickens, she might thereby have waived the jurisdiction and been bound by the action of the referee, subject to the review of the court, of course. She not being a party, however, and not appearing, so far as can be ascertained from the record, except as a witness in the case, I do not see how she can be bound by this decision of the referee. Her adverse claim appears clearly from the record, and that the same was determined against her without her being a party to the proceeding. This was manifestly erroneous.

I do not pass at all upon the merits of the matter, but disapprove the action of the referee for the reasons stated. If Miss Pickens desires to appear in this proceeding and prefers to dispose of it before the referee, I see no reason why they may not enter into a stipulation to that effect, and let the referee, after hearing from Miss Pickens, make such disposition of it as may be proper.

If no agreement is reached, the referee should dismiss this proceeding, without prejudice to the right of the trustee to institute such proceedings as he may be advised, in conformity with what has been said herein.