## In re JOHNSON.

(District Court, W. D. Arkansas, Texarkana Division. July 17, 1926.)

No. 788.

**1. Bankruptcy ☞288(10)—Bank held not an adverse claimant in possession with respect to deposit.**

Bankrupt, after a fire loss, assigned his insurance policy as security to a creditor bank, and he and the bank brought suit thereon. Other creditors commenced suits, and garnished the bank and insurance company. The attorney for bankrupt and the bank, after obtaining an agreement by the bank to accept 75 per cent. of its claim and permit the remainder of the proceeds to be divided among the other creditors, effected a settlement with the company and deposited the money in the bank to his credit. The bank, with knowledge that bankrupt had filed a petition in bankruptcy, charged against the attorney's account the entire amount of its claim and withheld the same. *Held*, that it held the money, subject to the agreement, and that its possession, except as to the 75 per cent. to which it was entitled, was not that of an adverse claimant, but was subject to summary order of the bankruptcy court.

**2. Bankruptcy ☞288(6)—Possession acquired by third party with knowledge of bankruptcy proceedings is not that of adverse claimant.**

Any person acquiring possession of property of bankrupt after filing of the petition, with notice of it, may be directed to surrender the property by summary order of the bankruptcy court.

In Bankruptcy. In the matter of Oscar Johnson, bankrupt. On petition of the Bank of Lockesburg for review of order of referee. Modified and affirmed.

James D. Head, of Texarkana, Ark., for trustee.

James D. Shaver, of Texarkana, Ark., for Bank of Lockesburg.

YOUMANS, District Judge. The following facts appear from the certificate of the referee; the facts found by the referee being sustained by the testimony:

(1) The bankrupt, Oscar Johnson, on and prior to December 9, 1924, was in the mercantile business at Lockesburg, Ark

(2) On December 9, 1924, his stock of merchandise was destroyed by fire.

(3) At that time he was indebted to the Bank of Lockesburg and also to a number of other creditors.

(4) On January 7, 1925, Johnson assigned to the Bank of Lockesburg an insurance policy for $8,000 on the stock of goods so destroyed.

(5) The insurance company denied liability on the policy, on the ground that Johnson had not complied with one of the condi-

tions of the policy, and it refused to pay anything thereon.

(6) Afterwards the Bank of Lockesburg and Johnson brought suit on the policy against the insurance company, and it filed answer denying any liability whatever.

(7) Afterwards, and more than four months prior to the filing of the petition in bankruptcy herein by Johnson, practically all of the bankrupt's creditors, other than the Bank of Lockesburg, brought suit against the bank and garnished the insurance company and the bank.

(8) Abe Collins, Esq., was the attorney for the bankrupt in all the suits against him, and Collins was also the attorney for Johnson and the bank in the suit by them against the insurance company.

(9) The amount sued for on the policy, if recovered, would have paid the bank and all of the bankrupt's mercantile creditors in full.

(10) Collins, as attorney for the bank and Johnson, secured an offer in compromise from the insurance company of $6,125 in full settlement, on condition that all garnishments against it be first released.

(11) This sum would not pay the bank and mercantile creditors in full.

(12) The bank authorized Collins to agree with the mercantile creditors that it would accept 75 per cent. on its claim against the bankrupt out of the amount paid by the insurance company in settlement of the suit, and allow the remainder to be applied pro rata to the payment of the claims of mercantile creditors.

(13) Upon that authorization Collins secured releases of all garnishments, and on December 28, 1925, received from the insurance company in full payment a check for $6,125, which check was made payable to the Bank of Lockesburg and Abe Collins.

(14) On December 22, 1925, the bankrupt filed his voluntary petition in bankruptcy and he was adjudicated a bankrupt on that day.

(15) Collins sent the check to the Bank of Lockesburg, with directions to the bank that the amount of the check be deposited to his credit on the books of the bank. This was done on December 29, 1926.

(16) On January 2, 1926, with full knowledge of the bankruptcy proceedings, and without authority from Collins, the bank charged to the account of Collins the full amount of its claim against Johnson, which was $2,917.93.

(17) On the same day it wrote to Collins the following letter, omitting the letter head:

"January 2, 1926.

"Mr. Abe Collins, De Queen, Arkansas—Dear Sir: We are charging your account with two thousand nine hundred seventeen and 93/100 dollars ($2,917.93) out of the proceeds of draft on the Home Insurance Company of New York in settlement of loss under their No. 235—Oscar Johnson, which policy was assigned after loss to this bank on January 7, 1925, to secure the above indebtedness. This is done with the understanding that, upon final decision of some court having jurisdiction we are not entitled to make such charge, it will be repaid by this bank.

"Yours very truly,

"R. S. Hunsucker, Cashier."

Upon the petition of the trustee in bankruptcy the referee made a summary order directing the bank to pay to the trustee within ten days the said sum of $2,917.93. The bank seeks a review and reversal of that order. All of the material facts found by the referee are admitted by the bank, with one exception.

The statement of the agreement is made by the attorneys for the bank in their brief as follows:

"Abe Collins was the attorney for the bank in its suit against the insurance company on the policy, and the attorney for Johnson in an effort on his part to effect an adjustment with his creditors and the bank, respecting the garnishments against the insurance company. Finally, a settlement was agreed upon between the bank and the insurance company, whereby the insurance company agreed to pay the sum of $6,125 as the loss under the policy sued on, but withheld payment until a release of the garnishments could be obtained. In the meantime negotiations were carried on by the garnishing creditors, with Abe Collins representing Johnson, and finally a tentative agreement was reached in this way. This agreement was to the effect that the funds to be paid to the bank was to be prorated between the bank and the garnishing creditors. However, this understanding was conditioned that Johnson was to secure the bank for the difference necessary to pay the bank's claim in full. This condition was never complied with. The garnishments were finally released in the late fall, and the money, as per the settlement agreed on theretofore between the bank and the insurance company, was paid to Collins on December 29, 1925, and the same was deposited by Collins in the Bank of Lockesburg. The funds obtained from the insurance company were more than ample to pay the bank's claim in full, and its claim thereto was prior and superior

to the other creditors of Johnson, and while the bank was not unwilling to prorate this fund with the garnishing creditors, its willingness was predicated upon Johnson securing it for whatever amount was necessary to pay its claim in full. Johnson was unable to furnish this security, and so far as the bank was concerned no agreement for a pro rata distribution was ever consummated."

Mr. Hunsucker, the cashier of the bank, and Mr. Collins both testified in the hearing before the referee. They did not agree in their testimony. According to Mr. Collins the creditor who was to be paid in full was a Mr. Tate, who held a lien note of the bankrupt upon some real estate. Johnson secured money enough outside of the funds arising from the insurance policy to pay Tate. According to Collins the agreement of the bank to accept 75 per cent. of its claim against Johnson was not conditioned upon the payment by Johnson to the bank of the remaining 25 per cent. The referee believed Collins. There is nothing in the testimony to impugn the good faith of Collins in his efforts to effect a settlement for the benefit of his clients, the bank and Johnson. It appears that the bank after having obtained the benefit of the compromise effected by Collins repudiated the agreement made by Collins by its authority and for its benefit, by which the collection was made. Mr. Collins stands better before the court than does Mr. Hunsucker.

[1] Attorneys for the bank contend that the bank was in possession of the funds and claimed them adversely, and therefore, the bankruptcy court was and is without jurisdiction to make a summary order. The possession of the bank was under the following conditions:

(1) Such possession was obtained after the agreement with regard to the compromise which involved a release of the garnishments by other creditors, and the acceptance by the bank of 75 per cent. of its claim out of the amount collected.

(2) The bank knew that the check was accepted by Collins and deposited by him upon that agreement.

(3) It knew that other creditors had released garnishments on the faith of that agreement.

(4) It knew that bankruptcy proceedings were then pending.

[2] It is now estopped to deny that such was the agreement. "The filing of the petition is a caveat to all the world, and in effect an attachment and injunction." Mueller v. Nu-

gent, 184 U. S. 1, 14, 22 S. Ct. 269, 275 (46 L. Ed. 405).

"In consequence, any person acquiring an interest in property of the bankrupt or his assignees for the benefit of creditors, adverse to the creditors, after the filing of a petition with notice of it, may be directed to surrender the property thus acquired by summary order of the bankruptcy court." May v. Henderson, 268 U. S. 111, 117, 45 S. Ct. 456, 459 (69 L. Ed. 870).

"Any other rule would leave the bankruptcy court powerless to deal in an effective way with those holding property for the bankrupt who, pending the bankruptcy proceedings, willfully dispose of it by placing it beyond the reach of the court." May v. Henderson, supra, page 118 (45 S. Ct. 459).

Moreover, the possession of the bank was not the ordinary and usual possession connoted when that term is used in connection with a summary order in bankruptcy. The bank secured the possession on condition that Collins should obtain credit for the full amount and with the full knowledge that it would secure therefrom only 75 per cent. of its claim against Johnson. Its possession was the direct result of such agreement. It cannot now ignore that agreement on which the money was obtained, and stand on the original assignment of the policy by which it obtained nothing.

In fact, the question of the possession of the money arising from the collection of the check or draft of the insurance company is not involved here at all. Upon the deposit of the check and the giving of credit on the books of the bank to Collins, the relation of debtor and creditor arose between the bank and Collins. The money became the property of the bank, and the credit became the property of Collins, who held the same for the creditors of Johnson, including the bank. This was known to the bank, when it arbitrarily and without legal right appropriated to itself a part of that credit.

The situation in this case is very similar to that in the case of May v. Henderson, supra, page 116 (45 S. Ct. 459), in which the court said: "We are not therefore dealing with money in the possession of the assignees of the bank in any literal sense, but the credit as a mere chose in action was held by the assignees for account of the bankrupt and they were bound to account for its proper disposition as for any other property coming into their hands."

But the undisputed testimony shows that

the bank is entitled to payment out of that fund for 75 per cent. of its claim. The original assignment of the policy was not set aside by the subsequent agreement. It was only modified to the extent of substituting 75 per cent. for the whole amount. The effectiveness of the assignment as to the 75 per cent. is as complete now as it was on the date the assignment was made, January 7, 1925. Therefore the bank should not be required to pay to the trustee the full amount retained by it, but only 25 per cent. of that amount, to wit, $729.48. It is entitled to retain 75 per cent., even as against the trustee, because its right to that relates to the date of the assignment of the policy.

The check was made payable to the bank and Collins. The bank was interested in the proceeds of the check to the extent of 75 per cent. of its claim. It would have been warranted in the first instance in giving credit to Collins for the balance, after deducting its 75 per cent.

The order of the referee will therefore be modified, in that the bank will be required to pay to the trustee within 10 days the sum of $729.48, and, as modified, the order of the referee will be affirmed.