## CLARK v. MILENS.

Circuit Court of Appeals, Ninth Circuit.
October 8, 1928.

No. 5500.

Coan & Rosenberg, of Portland, Or., for appellant.

James H. McMenamin and Thomas J. Cleeton, both of Portland, Or., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and NORCROSS, District Judge.

DIETRICH, Circuit Judge. On December 3, 1926, the appellee, who had been engaged in the retail shoe business at Portland, Or., was adjudged a bankrupt. After a hearing in which she participated and which was in all respects regular, the referee on July 22, 1927, entered an order requiring her to pay over to the trustee $5,377.37. The order was predicated upon findings of fact to the effect that during the year 1926 appellee had received in cash from the sale of merchandise that amount of money over and exclusive of all disbursements, that a large part thereof was drawn out of the business immediately preceding the adjudication, and that "the bankrupt, although given every opportunity to explain what has become of said money, has wholly failed to account for the use of said money, or to give any plausible explanation as to the use thereof, and the referee finds that said sum of $5,377.37 was in the possession of the bankrupt at the date of the adjudication in bankruptcy herein, and was and now is concealed by said bankrupt from her trustee in bankruptcy, George P. Clark;  *  *  *  that the said bankrupt, Edna G. Milens, now has in her possession

said sum of $5,377.37, which she has failed and refused, and still fails and refuses, to account for or pay over to the trustee, and which sum the refereee finds that bankrupt does now and has knowingly and fraudulently and willfully concealed from her trustee in bankruptcy.''

In no manner did she seek to have the findings or order revised or set aside by the District Judge, and she wholly failed to comply with the order. Accordingly on August 24, 1927, the referee certified the facts to the District Judge, with recommendation that she be cited for contempt. On March 17th of the following year the District Judge duly ordered her to appear and show cause why she should not be so punished. To this order she appeared, and on March 26th filed a verified answer. In effect the answer admits that she was present at the hearing before the referee, alleges that she "has no recollection of any order having been served upon her to pay over $5,377.37," excepts to and denies "the correctness of the referee's findings," alleges that, notwithstanding such findings, she "did not have in her possession at any time said alleged cash of $5,377.37, and has never had said amount, or any amount, of money with reference thereto, then, ever since, or now," avers that she is "wholly and completely financially embarrassed and has been for some time past physically disabled," and states that she "throws herself wholly and completely upon the mercy of the court." In a so-called affirmative defense she alleged that there was a complete failure of proof to support the referee's findings; that she had done all within her power "to keep within the law, and to abide by all judgments of the court and referee"; and that, "if she has made a mistake, it has been through ignorance," etc. There are also some immaterial allegations of error on the part of the referee in respect to the proceedings for the bankrupt's discharge in bankruptcy.

Having been set down for hearing, the matter was submitted to the court below on the order to show cause and this answer, and the records of the referee; the bankrupt offering no testimony and giving no further reasons explanatory of her failure to comply with the turn-over order. On April 23, 1928, the court made an order, which the trustee now presents for review, dismissing the proceeding and purging the bankrupt of contempt.

In the proceeding before the referee, he was exercising the authority vested in him by the Bankruptcy Act (11 USCA). He had jurisdiction both of the subject-matter and of the person of the bankrupt. His order, made after hearing and not challenged by any proceedings for review, became a judicial determination of the issues then before him, and, like any other final judgment or order, is binding upon the parties thereto. It constitutes a judicial estoppel. Power v. Fuhrman (9th C. C. A.) 220 F. 787; Reardon v. Pensoneau (8th C. C. A.) 18 F.(2d) 244; Dittmar v. Michelson (3d C. C. A.) 281 F. 116; In re Oriel (2d C. C. A.) 23 F. (2d) 409; Mueller v. Nugent, 184 U. S. 1, 22 S. Ct. 269, 46 L. Ed. 405. The record and the bankrupt's admission that she had not complied with the order made a prima facie case of contempt. She could purge herself of the charge by showing that for sufficient reasons she was unable to obey; but the burden was upon her, by appropriate pleadings and evidence, to make that showing. She not only failed circumstantially or adequately to plead such conditions or causes, but she produced no evidence at all explanatory of her default. Both upon principle and the great weight of authority we think her showing insufficient. To the cases cited supra we may add: 1 Collier on Bankruptcy (13th Ed.) § 41, pp. 993, 996; 5 Remington on Bankruptcy (3d Ed.) § 2428, p. 560; In re Frankel (D. C.) 184 F. 539; In re Shelley (D. C.) 8 F.(2d) 878; In re Weber Co. (C. C. A.) 200 F. 404; U. S. ex rel. Paleais v. Moore (C. C. A.) 294 F. 852; In re Meier (C. C. A.) 182 F. 799; In re Magen Co. (C. C. A.) 10 F.(2d) 91; In re Magen Co. (D. C.) 14 F.(2d) 469.

We are not to be understood as holding that in no conceivable case will the court be warranted, in a contempt proceeding such as this, in giving consideration to conditions existing prior to or at the time the turn-over order was made. The nature and purpose of the proceeding is always to be borne in mind. As was said by the Supreme Court in Gompers v. Buck Stove & Range Co., 221 U. S. 418, 442, 31 S. Ct. 492, 498 (55 L. Ed. 797, 34 L. R. A. [N. S.] 874): "Imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order, which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial, by coercing the defendant to do what he had refused to do." 

That being the case, the coercive measure is appropriate only when and so long

as the defendant is able to obey. Disability willfully incurred after the making of the turn-over order may, as a completed act of disobedience, constitute criminal contempt, punishable as such; but, however and whenever incurred, disability terminates the propriety of coercive remedies. Whether, at any stated time, the defendant has the present ability to obey, is a question of fact to be determined in the light of all the circumstances, and the circumstances at such time may be so connected with conditions existing when the turnover order was made or prior thereto that the latter must be considered in arriving at a just conclusion. But at the threshold of any inquiry the turn-over order must be assumed to have been correct, and the presumption of continuing ability to comply must prevail until the defendant satisfies the court that it no longer exists. Each case is to be adjudged upon its own circumstances. One of these circumstances may be the failure of the coercive measures, after the lapse of a reasonable length of time, to accomplish the desired result. In re Epstein (D. C.) 206 F. 568, apparently approved in Dittmar v. Michelson, supra. But we need not speculate upon what might be a reasonable showing, for here it is not contended that upon a hearing the lower court was convinced that the bankrupt was without the present ability to obey. She offered no evidence at all.

Reversed, with directions to take further proceedings not out of harmony herewith.