## In re FLEISCHER.

(District Court, S. D. New York. February 7, 1907.)

BANKRUPTCY—EXAMINATION OF BANKRUPT—POWERS OF COURT.

An alleged bankrupt for whose property a receiver has been appointed in involuntary proceedings pending a hearing on the petition is a "bankrupt whose estate is in process of administration under this act," within the meaning of Bankr. Act July 1, 1898, c. 541, § 21a, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430], and on application by the receiver the court may order him to appear for examination thereunder; and aside from such section the court has authority to make such an order under the general equity powers conferred upon it by the act.

In Bankruptcy. On motion to vacate order for examination of alleged bankrupt.

Goldfogle, Cohn & Lind and Mr. Cohn, for the motion.

James, Schell & Elkus and Mr. Rosenberg, opposed.

HOUGH, District Judge. An involuntary petition having been filed against Fleischer, and a receiver appointed, an order was entered directing the person proceeded against to appear before the court or a commissioner thereof and submit to an examination touching his acts, conduct, or property. The motion is to vacate this order, in that the court had no jurisdiction to grant the same prior to Fleischer's adjudication.

The order in question is in assumed compliance with section 21a of Bankr. Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430], and the motion to vacate rests upon the proposition that Fleischer (before adjudication) is not a person "whose estate is in process of administration under this act." It is not denied that the application for the order, having been made by a receiver, was made by an "officer," and therefore to that extent proper. In re Fixen, 2 Am. Bankr. Rep. 822, 96 Fed. 748. And the same case furnishes authority for the action of the receiver in proceeding to examine the alleged bankrupt prior to his adjudication. This motion, however, challenges the authority of that case by criticising the word "administration" as found in the section of the act referred to. In my opinion this criticism is ill founded. The word is not used in the act with any technical or narrow meaning. To administer is "to control or regulate in behalf of others" (Cent. Dict.), and this is exactly what a receiver in bankruptcy does, and must do, with the property of one against whom a petition has been filed. It is the very object of his appointment to control and regulate on behalf of the creditors of the alleged bankrupt the property concerning which the investigation is to take place. It is a matter of common knowledge that orders, under circumstances similar to the present, have long been made in this circuit. The same practice was evidently pursued in the South Carolina district (In re Knopf, 16 Am. Bankr. Rep. 432, 144 Fed. 245), and it is within the knowledge of most practitioners that the same course is pursued by the federal courts sitting in the principal commercial cities of the Union. The practice, however, is older than the present

act. Under the statute of 1841 the then judge of this court required an examination before adjudication. Ex parte Lee, Fed Cas. No. 8,178. So, also, under the act of 1867 an examination might be had "before the appointment of the assignee" upon cause shown (In re Gilbert, Fed. Cas. No. 5,410), while in Re Salkey, Fed. Cas. No. 12,252, it was distinctly held that the power of the court was "plenary prior to the adjudication, not only over the debtor's property, but over his person," and that, therefore, he might be examined fully before he definitely became a bankrupt by the adjudicating decree.

It is, I think, also well argued on behalf of the receiver that ample power to support the order objected to is to be found in the general equity powers of the bankruptcy court as conferred and explained by the act itself and the decisions thereunder. The construction invariably placed upon federal bankruptcy statutes has, in the language of Judge Betts (Ex parte Lee, supra), been to hold that the bankruptcy tribunal "is also authorized to proceed summarily as in chancery," and, reasoning from that analogy, under the statute then in force, that learned court continued:

"In summary proceedings in equity it is the ordinary practice to send matters before a master in chancery for examination. * * * [The alleged bankrupt] is therefore bound to go before a commissioner for examination before he is declared bankrupt."

Nor are the powers of the courts to which the administration of the present bankruptcy law is intrusted any more confined. In Re Lipke, 3 Am. Bankr. Rep. 569, 98 Fed. 970, Judge Brown of this court held that, under "the broad powers at law and in equity conferred upon the District Courts in bankruptcy proceedings," it was competent "to issue an order in the nature of a writ of ne exeat" whenever such process became necessary for the enforcement of the provisions of the bankrupt act. And this because such writ was one of "familiar use in equity." In Re Levi & Klauber, 15 Am. Bankr. Rep. 294, 142 Fed. 962, 74 C. C. A. 132, the Circuit Court of Appeals for this circuit declared that "under the present act proceedings upon an [involuntary] petition have the ordinary incidents of a hearing in equity," and obviously such condition of affairs arises immediately upon the filing of the petition, for such a petition is "a caveat to all the world and in effect an attachment and injunction." Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. Regarding, therefore, an involuntary petition as the beginning of an action in equity in which an attachment and injunction instantly issues, it does not appear to me to be open to doubt that the moment a receiver is appointed for the purpose of making the attachment fruitful and enforcing the injunction that the administration of the estate has begun, and an investigation thereinto is not only proper and necessary, but explicitly authorized by the act.

It is also to be noted that by section 1, subd. 4 (30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), the word "bankrupt" includes an alleged bankrupt, so that no argument can be based upon the use of the former word in section 21a. Assuming that the proceedings upon an involuntary petition are of the nature of a summary proceeding in equity, it

is obviously important to observe that section 2, subd. 3 (30 Stat. 545 [U. S. Comp. St. 1901, p. 3421]), authorizes the court to appoint receivers "to take charge of the property of bankrupts [including alleged bankrupts] after the filing of the petition" and to (15) "make such orders * * * in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act"; while the enumeration of powers contained in section 2 concludes with the significant statement that the grant of enumerated powers shall not "be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated." It follows, therefore, that entirely apart from the to me ample language of section 21a the order herein complained of may and should be sustained if it, or any analogue thereof, would be allowable in the conduct of an action in equity in a court of plenary jurisdiction. In New York, therefore, under the act of March 9, 1892 (27 Stat. 7, c. 14 [U. S. Comp. St. 1901, p. 664])—providing that depositions of witnesses may be taken in the mode prescribed by the laws of the state in which the federal courts sit—the provisions of the Code of Civil Procedure with respect to examinations before trial are ample for the purpose sought to be attained by the order under consideration. I think, also, the same result may be reached under the equity rules. Under section 30, Act July 1, 1898, c. 541, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3434]; general order No. 37 (89 Fed. xiv; 32 C. C. A. xxxvi), has been promulgated by the Supreme Court of the United States. This order establishes the rules of equity practice as regulating procedure in bankruptcy so far, inter alia, as taking testimony is concerned, and equity rule No. 70 provides for the examination of a "single witness to a material fact even before defendant's answer," and it appears to me obviously true that an alleged bankrupt as to his own business dealings is eminently a single witness to a material fact.

The desirability and importance of promptly conducting an investigation into the affairs of any person petitioned into the bankruptcy court has been too often shown to be open to doubt. To wait until adjudication to ascertain from the bankrupt's own lips the situs of his property and his own explanations of the situation in which the creditors find themselves is in many cases giving to those guilty of fraud just the necessary time to permit the fraud to be consummated and the fruits thereof secured. In my opinion it is not too much to say that a skillful and vigorous use of early examinations of involuntary bankrupts is the one thing which enables creditors to prevent this statute being easily turned into a shield for dishonesty and a potent aid to fraud.

The motion is denied.