SKUBINSKY v. BODEK et al.

(Circuit Court of Appeals, Third Circuit. May 28, 1909.)

No. 16.

BANKRUPTCY (§ 236*)—EXAMINATION OF BANKRUPT—RIGHT TO EXAMINE BEFORE ADJUDICATION.

Bankr. Act July 1, 1898, c. 541, § 21a, 30 Stat. 552 (U. S. Comp. St. 1901, p. 3430), which empowers a court of bankruptcy to require a bankrupt to appear before a referee "to be examined concerning the acts, conduct or property of a bankrupt, whose estate is in process of administration under this act," does not authorize a reference for the examination of an alleged bankrupt before his adjudication and before the time has arrived when he is required to answer the petition, on motion of a receiver appointed for his property, which cannot be said to be "in process of administration" under the act; the function of the receivership being solely preservative of the estate, and not administrative.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 236.*]

Buffington, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Petition for review of order granting special reference.

Clinton O. Mayer, for appellant.

Alfred Aarons and Henry N. Wessel, for appellees.

Before GRAY and BUFFINGTON, Circuit Judges, and BRAD-FORD, District Judge.

BRADFORD, District Judge. This is a petition for the review of an order of the District Court of the United States for the Eastern District of Pennsylvania, made November 12, 1908, granting a special reference with power to the referee "to take testimony, summon and require the attendance of witnesses, and demand the production of such books, papers, documents and other articles as may be required in the investigation of the matters pertaining to the business and conduct of the alleged bankrupt aforesaid, and all other persons with whom he may have transacted business, or in connection with whom he may have committed unlawful acts." The respondents in the petition for review filed a petition in involuntary bankruptcy against Fritz Skubinsky November 3, 1908, alleging, among other things, that he was insolvent; that he had transferred, concealed and removed, and permitted to be concealed and removed a large portion of his personal property with intent to hinder, delay and defraud his creditors; and that while insolvent he had transferred a sum of money to certain of his creditors, named in the petition, with the intent to prefer them over his other creditors. On the filing of the petition in bankruptcy it was ordered that Skubinsky should appear in the court below November 18, 1908, and show cause why the prayer of the petition should not be granted, and further that a copy of the petition together with a subpœna should be served on him. A subpœna, returnable November 18, 1908, together with a copy of the petition, was duly served November 6, 1908. W. Bodek was on the day of filing the petition appointed receiver of the assets and effects of Skubinsky and authorized and directed to cause an inventory and appraisement of such assets and effects as may come into his possession to be made and to apply to the court "for leave to take such action as to the administration of the estate as may seem meet and proper," and it was ordered that the alleged bankrupt should "forthwith turn over and deliver to the said receiver all books, papers, deeds and documents bearing upon or relating to his business and affairs." The receiver presented November 12, 1908, a petition on which the order complained of was granted, setting forth:

"That he is the receiver in the above entitled case, and has duly qualified. That your petitioner is informed, believes and expects to be able to prove that within the last week preceding the filing of the petition in bankruptcy in this matter, the alleged bankrupt above named and numerous other persons acting in collusion with him, were guilty of removing and concealing property and assets of the said alleged bankrupt. That it is essential for the interests of this estate that an investigation be commenced immediately for the purpose of discovering what disposition has been made of the assets which were in the possession of the alleged bankrupt immediately before the filing of the petition in bankruptcy, and of attempting to regain for the interest of this estate assets which have been unlawfully and fraudulently concealed and removed. Petitioner represents that the delay incident to an adjudication and the calling of a meeting of creditors before a referee upon the usual notice would render practically impossible the proper investigation of the fraudulent acts which have been committed in and about the various attempts which have been made to remove and conceal the assets which lawfully belong to this estate."

It appears from the record that the order complained of was granted before Skubinsky made answer to the petition in involuntary bankruptcy, or in any manner raised an issue, either of law or of fact, with respect to its averments, and six days before the time fixed for the showing of cause why the prayer of that petition should not be granted, and thirteen days before Skubinsky was adjudicated a bankrupt. There are three assignments of error, each of them challenging the legality of the order of special reference. The last reads as follows:

"That the learned judge of the District Court erred in granting the special reference before the adjudication of the alleged bankrupt and before his estate was in process of administration."

Section 21a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430]), as amended February 5, 1903 (Act Feb. 5, 1903, c. 487, § 7, 32 Stat. 798 [U. S. Comp. St. Supp. 1907, p. 1028]), provides, among other things, as follows:

"A court of bankruptcy may, upon application of any officer, bankrupt, or creditor, by order require any designated person, including the bankrupt and his wife, to appear in court or before a referee or the judge of any state court, to be examined concerning the acts, conduct or property of the bankrupt whose estate is in process of administration under this act."

The authority conferred by this section to grant a reference for the purpose of throwing light on "the acts, conduct or property of the bankrupt" is limited to the case of one "whose estate is in process of administration under this act." While by virtue of section 1 of the act the term "bankrupt" may include a person against whom an involuntary petition has been filed as well as one who has been adjudged a bankrupt, section 21 contains the significant and unambiguous words "bankrupt whose estate is in process of administration under this act." We do not think that the appointment and qualification of the receiver and his exercise of official functions before the adjudication of Skubinsky as a bankrupt and, indeed, before the return of the rule to show cause or the presentation of any issue of law or fact in the case, can be tortured into process of administration of his estate under the act. It did not appear when the order of special reference was made that he ever would be adjudged a bankrupt. The appointment of receivers in bankruptcy can be justified only where it shall be found "absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified." Such a receivership certainly up to the time of an adjudication is purely a precautionary measure. Until after an adjudication the function of a receivership is not administrative of the estate in bankruptcy, but solely preservative. And this is equally true whether receivers in bankruptcy are or are not authorized by the court to conduct the business of alleged bankrupts for limited periods. While such authority can be conferred upon receivers only "if necessary in the best interests of the estates," the granting of such authority and action thereunder prior to an adjudication of bankruptcy can in no legitimate sense be deemed process of administration of the estate under the act.

It doubtless is true that a receiver may be authorized by the court, even before an adjudication, to collect and secure possession of moneys and other property belonging to the alleged bankrupt; but such action on the part of the receiver before an adjudication does not constitute or involve "process of administration under this act." It is simply gaining control of the estate which is to be subjected to the process of administration if an adjudication of bankruptcy shall be made. If the appointment of a receiver before adjudication per se constitutes process of administration and no adjudication be made the remarkable result is presented of a process of administration, and consequently a partial administration, in bankruptcy, of the estate of the alleged bankrupt where absolutely no beneficial object or purpose of the bankruptcy act can by any possibility be effected. The special reference before adjudication to inquire into "matters pertaining to the business and conduct of the alleged bankrupt," was premature, inquisitorial and not to be tolerated. Common fairness requires that the alleged bankrupt before being subjected to such a proceeding and before any order can properly be made in that behalf, should have the opportunity to make defense to the petition seeking his adjudication as a bankrupt. We are not aware of any provision in the bankruptcy act when fairly construed which justifies the order of special reference now before us.

The order must, therefore, be reversed, with costs, and it is so ordered.

BUFFINGTON, Circuit Judge (dissenting). I dissent from the construction placed by the majority opinion on section 21, cl. "a," of the bankrupt act, which provides:

"A court of bankruptcy may, upon application of any officer, bankrupt, or creditor, by order require any designated person, including the bankrupt and his wife, to appear in court or before a referee of the judge of any state court, to be examined concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration under this act."

By that construction a court of bankruptcy is powerless, until adjudication of an alleged bankrupt, to examine him thereunder. As this construction is based on the ground that until that time there is no "bankrupt whose estate is in process of administration," it follows that no other person can be examined until after adjudication, for such inquiry being limited to "the acts, conduct or property of a bankrupt whose estate is in process of administration," and prior to adjudication there being no such person, it follows that no witness can be called under this section until after adjudication. Now, as 20 days must elapse, whether the bankruptcy is contested or conceded, before adjudication, during this time the court is powerless to act under this section. Of this period Judge Hough, of the Southern District of New York, has, in Re Fleischer, 18 Am. Bankr. Rep. 197, 151 Fed. 81, well said:

"The desirability and importance of promptly conducting an investigation into the affairs of any person petitioned into the bankruptcy court has been too often shown to be open to doubt. To wait until adjudication to ascertain from the bankrupt's own lips the situs of his property and his own explanations of the situation in which the creditors find themselves is in many cases

giving to those guilty of fraud the necessary time to permit the fraud to be consummated and the fruits thereof secured. In my opinion it is not too much to say that a skillful and vigorous use of early examinations of involuntary bankrupts is the one thing which enables creditors to prevent this statute being easily turned into a shield for dishonesty and a potent aid to fraud."

And in the case now before us such construction made a court powerless to act, although the facts are as stated by the untraversed petition of the court's receiver that—

"the alleged bankrupt" was "guilty of removing property and assets, * * * that it is essential for the interests of this estate that an investigation be commenced immediately for the purpose of discovering what disposition has been made of the assets which were in the possession of the alleged bankrupt immediately before the filing of the petition in bankruptcy," and "that the delay incident to an adjudication * * * would render practically impossible the proper investigation of the fraudulent acts which have been committed."

The bankrupt law has two objects: One to collect all the bankrupt's property and marshal it; the other to discharge him from all liabilities when he has surrendered all his property. To enable the court to accomplish this, the act makes different provisions. Thus it is made the duty of the bankrupt by section 7, cl. 1, "to attend the first meeting of his creditors, if directed by the court or a judge thereof to do so," and by clause 9, "when present at the first meeting of creditors and at such other times as the court shall order, submit to an examination concerning the conduct of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind and whereabouts of his property, and in addition, all matters which may affect the administration of his estate." Now it is clear that, while this section makes it the duty of the bankrupt to be examined at the first meeting of creditors and also "at such other times as the court shall order," it makes no provision when those other times are; but as the creditors' meeting can be adjourned and the bankrupt examined at such adjourned creditors' meeting—Collier on Bankruptcy (4th Ed.) p. 234—it is evident we must look elsewhere in the act for provisions for examinations "at such other times as the court shall order." And since provision was thus made for examinations first and subsequent before the referee, it would seem the act would naturally make the other examinations in advance of adjudication. Such we find to be the case. Thus by section 9, cl. "a," the court is authorized, "at any time after the filing of a petition by or against a person," on proof that "such bankrupt is about to leave the district * * * to avoid examination," to cause his arrest and to imprison him or commit him to bail "for his appearance for examination, from time to time, not exceeding in all ten days."

Now two things are to be here noted: First, that the person against whom a petition is filed is herein described as a bankrupt; and, secondly, that if such bankrupt is arrested within 10 days after the petition is filed against him, the examination ordered must necessarily take place before adjudication, since no adjudication can be made short of 20 days. So, also, section 3, cl. "d," compels a person against whom a petition is filed and who denies insolvency to appear in advance of adjudication and "submit to an examination and give testimony as to all matters tending to establish

solvency or insolvency." And section 2, cl. 3, authorizes the appointment of receivers, a power exercised without question in advance of adjudication, and authorizes them "to take charge of the bankrupt's property after the filing of the petition," thus recognizing both the court's administrative duty in advance of adjudication and the use of the word bankrupt to describe the debtor. Moreover, as by section 2, cl. 7, the court is authorized to cause the estates of bankrupts to be collected, reduced to money, and distributed, and by clause 15 "to make such orders, issue such process and enter such judgments, in addition to those specifically provided for as may be necessary for the enforcement of this act," it would seem, if to collect the property of the bankrupt it became necessary to obtain from him information that would aid in its collection, that apart from any section specifically authorizing thereto this general power in clause 15 would warrant the court in taking effective summary proceedings. Indeed, the plain, direct, and simple agencies of the bankrupt court in its administrative capacity is recognized in Mueller v. Nugent, 184 U. S. 14, 22 Sup. Ct. 274, 46 L. Ed. 405, where the court say:

"In other words, the question reduces itself to this: Has the bankrupt court the power to compel the bankrupt, or his agent, to deliver up money or other assets of the bankrupt, in his possession or that of some one for him, on petition and rule to show cause? Does a mere refusal by the bankrupt or his agent so to deliver up oblige the trustee to resort to a plenary suit in the Circuit Court or a state court, as the case may be? If it be so, the grant of jurisdiction to cause the estates of bankrupts to be collected, and to determine controversies relating thereto, would be seriously impaired, and, in many respects, rendered practically inefficient. The bankruptcy court would be helpless indeed if the bare refusal to turn over could conclusively operate to drive the trustee to an action to recover as for an indebtedness, or a conversion, or to proceedings in chancery, at the risk of the accompaniments of delay, complication, and expense, intended to be avoided by the simpler methods of the bankrupt law."

And there is no reason for withholding, and every reason for exercising, the power of the court to act by these "simpler methods of the bankrupt law" during these 20 days. True, the alleged bankrupt may not be adjudicated; true, his property, of which the court had taken constructive possession by the filing of the petition and actually by the appointment of its receiver, might subsequently be abandoned to him; but from the moment the petition was filed the jurisdiction of the court attached, and because jurisdiction had attached the administration of the trust and estate had begun. As was said in Mueller v. Nugent, supra:

"It is as true of the present law as of that of 1867 that the filing of the petition is a caveat to all the world, and in effect an attachment and injunction."

But, while all the provisions cited enable a court of bankruptcy to call before it the bankrupt for examination, section 21, cl. "a," provided for calling before it other designated persons, "including the bankrupt." Its purpose, so far as the bankrupt is concerned, is well stated in the referee's opinion in Re Cobb, 7 Am. Bankr. Rep. 104, which was adopted by Judge Lowell:

"It is to be noted in the first place that the examination of a witness summoned under section 21a, upon the application of the trustee, is an entirely

distinct and independent proceeding from the ordinary bankrupt's examination held at the first meeting of creditors or at some adjournment thereof. * * .* The examination of, a witness by the trustee under section 21a is taken solely for his information, to enable him to act intelligently in the premises and to take such steps as may be necessary for the protection and preservation of the estate."

That the examination of the bankrupt ordered under section 21a is different from the examination before the referee at creditors' meetings is also the view of the text-writers. Collier on Bankruptcy (4th Ed.) p. 234, says:

"It should be noted, however, that while this subsection (21a) makes the bankrupt a compulsory witness as to his own 'acts, conduct or property,' by section 7 (9) he must also be ready to testify concerning the same things at the first meeting of creditors. * * * In effect, the only difference, as far as the bankrupt goes, is one of practice. Where first meetings are kept alive by continuances, as is customary, his examination can be had or resumed so long as the meeting lasts. If the meeting had been adjourned, an examination can, under section 7 (9), still be had at such times as the court shall order, or it can be required under the section now discussed. Clearly, therefore, the main purpose of section 21a is to authorize and regulate the examination of third parties, rather than that of the bankrupt. * * * Without the power to so examine, the remedy of the statute against preferences and fraudulent transfers would often be unavailing."

So, also, in Loveland's Bankruptcy (2d Ed.) p. 615, it is said:

"The language of these provisions is very general. They give the referee power to summon any person who could give evidence in a court of law. They authorize the examination of them upon all matters which are likely to arise in respect to the bankrupt or his property. The only limitation as to time within which this power may be exercised is that the estate shall be in process of administration in bankruptcy. The judge or referee may therefore summon a witness at any time after the commencement of proceedings until the estate is closed by order of court. The referee, of course, can only summon witnesses while the case is pending before him upon reference."

The construction thus placed on this section makes a complete system of the bankrupt law, enables courts to thwart fraud and fulfill the purpose of the law, gives effect to this clause, and gives to its words the same meaning as in other parts of the act. The act clearly makes no provision that the court's jurisdiction shall be divided into two periods, viz., a nonadministrative period prior to adjudication, and an administrative one after adjudication. On the contrary, the whole tenor of the act is to regard the time from the filing of the petition to the close of the proceeding as an administrative whole. Thus section 1, cl. 4, provides that the word "bankrupt" shall "include a person against whom an involuntary petition * * * has been filed, or who has filed a voluntary petition, or who has been adjudged a bankrupt"; clause 10, that the word "bankruptcy" "with reference to time, shall mean the date when the petition was filed." Moreover, the examination of the bankrupt in advance of adjudication is no new departure in bankruptcy administration. Act Aug. 19, 1841, c. 9, § 4, 5 Stat. 443, provided:

"And such bankrupt shall at all times be subject to examination, * * * and his acts and doings and his property and rights of property, which, in the judgment of such courts, are necessary and proper for the purposes of justice."

And in Ex parte Lee, Fed. Cas. No. 8,178 (a voluntary case), it was held by Judge Betts that both voluntary and involuntary bankrupts could be examined in advance of adjudication. He there says:

"It is said that Congress intended only that he should be subject to an examination after being declared a bankrupt. But in referring to another section of the act it will be found that he takes the name of bankrupt before he is pronounced so by the court. On filing their petitions they are deemed bankrupts, and that is the descriptio personæ."

Under Act March 2, 1867, c. 176, 14 Stat. 517, the examination was not deferred until after adjudication, but the court was authorized to "at all times require the examination of the bankrupt." And so, also, the word "administration" in the clause before us is in our judgment used in a broad sense as descriptive of the whole bankruptcy proceeding, rather than in the narrower, technical sense of that part of the administrative work which begins after adjudication. In other words, the administration which proceeds from adjudication is simply the continuation of that which preceded adjudication. This is most clearly implied in section 22, cl. "a," which provides:

"After a person has been adjudged a bankrupt, the judge may cause the trustee to proceed with the administration of the estate or may refer it."

Proceeding with an administration implies that administration has already begun. Moreover, since by section 64, cl. "b," the first item paid out of a bankrupt's estate is "the actual and necessary cost of preserving the estate subsequent to filing the petition," it is hard to say that the court, which was preserving and keeping intact the property prior to the appointment of a trustee, was not administering. The word "administer" means literally to minister to, to serve, and surely preliminary preservation, getting trace of assets, preventing concealed goods from being spirited away, in other words, preventing the scattering and dissipating of property, so that there may be an estate to sell and distribute, is the very gist of administration. To say that administration, the duty of the court to administer by conservation, does not begin until after adjudication, is to lose sight of the most effective scope of the court's jurisdiction. With adjudication and the selection by the creditors of a trustee the creditors assume charge. But before adjudication, and when creditors have no representative, the court is their representative, and is either by its own process or its own receiver administering for their benefit. We may rightfully use, of the administration of a bankrupt court, mutatis mutandis, the language of the Supreme Court of Alabama, in Martin v. Ellerbe's Adm'r, 70 Ala. 326, and say:

"The term 'administration' includes more than the collection of assets and the payment of debts and legacies and distribution to the next of kin, and involves anything that may be done rightfully in the preservation of the assets of the estate and which may be done legally by the administrator in his dealings with creditors, distributees, or legatees, or which may be done by them in securing their rights."

Holding, then, that an estate in bankruptcy is aptly described as "in process of administration under this act" from the time the clerk files a petition in bankruptcy, which is "a caveat to all the world and in effect an attachment and injunction," I am of opinion the order of reference in this case was within the statutory powers of the court.