**In the Matter of LIEB BROS., INC., Debtor.**

**No. B-539-55.**

United States District Court
D. New Jersey.

Oct. 13, 1961.

See also 150 F.Supp. 68.

Furst, Furst & Feldman, by David E. Feldman, Newark, N. J., for Creditors' Committee; A. Charles Lawrence, Chicago, Ill., of counsel.

Sanford Silverman, Newark, N. J., for Cooltronic Corp. of America.

WORTENDYKE, District Judge.

This case is before me on petition of the Official Creditors' Committee for review of two orders of the Referee in a Chapter XI proceeding. The first order was entered April 20, 1961 and vacated restraints against suits by creditors; and the second, entered June 7, 1961, denied the application of the Creditors' Committee for the vacation of the first order.

On September 30, 1955 Lieb Bros. Inc. (Lieb) filed a voluntary petition for arrangement, and on that day a receiver was appointed. The order of appointment provided, *inter alia*, that all persons were enjoined "from suing out or proceeding with any writ, process, attachment, or other legal proceedings against said debtor." It is this injunction which was vacated by the order of April 20, 1961.

The source of Lieb's difficulties appears to have been its contract with the United States for construction work to be performed at Scott Air Force Base, Missouri. After the signing of the contract, the United States, pursuant to the provisions thereof, cancelled much of it, which caused a loss to Lieb estimated at $2,429,851.24. 35% of the loss sustained was incurred by Economy Plumbing and Heating Co. (Economy), which had participated with the debtor in the Government contract to that extent, and had agreed to indemnify American Surety Company which had become surety upon the required payment and performance bonds to the United States, in connection with the construction contract. Prior to the filing of the Chapter XI petition, Economy, at its own expense, retained A. Charles Lawrence, Esq. and his law firm, to initiate proceedings against the United States for the loss resulting from the partial termination of the contract. After the filing of the petition for arrangement, the receiver and the American Surety Company entered into a stipulation, which provided, inter alia, that Mr. Lawrence would represent both of them, as well as Economy, in the prosecution of the termination claim against the Government. It was further stipulated that Mr. Lawrence would not approve any settlement without the consent of the Court. This stipulation was duly approved by order of the Referee.

Thereafter the debtor filed an amended plan of arrangement which provided for (1) the distribution of all funds in the hands of the receiver, in partial pay-

ment of expenses and claims; (2) the use of proceeds from the termination claim to pay off all claimants in full; (3) the transfer of all stock of the debtor to the Creditors' Committee to conduct the business until all the creditors had been paid; and (4) the retention of jurisdiction by the Court to determine the acceptability of any offer of settlement of the termination claim, and to adjudicate the validity of claims contested by the debtor, if any. The amended plan was silent as to any restraint against the institution of suits by creditors.

On January 21, 1958 the plan as amended was confirmed, and title to its assets was revested in the debtor. On December 16, 1958, the receiver was discharged, the bond cancelled, and the debtor's estate distributed in accordance with the provisions of the arrangement.

On April 20, 1961, Cooltronic Corporation of America (Cooltronic), an alleged creditor of the debtor, successfully moved for vacation of the injunction, and it is the correctness of the order issued thereon that is the subject of the controversy here.

The Creditors' Committee asserts that, given the opportunity to properly defend against the claim asserted by Cooltronic it will be able to defeat it, but that at the present time it is unable to do so for the reason that it is without funds and will continue to be until the termination claim presently on appeal from the "Contracting Officer's Decision" is determined. The Committee contends upon this review, that the injunction in the order appointing the receiver should be reinstated.

The Referee states in his Certificate that "When the responsibility of the receiver was terminated by his discharge, the injunction likewise terminated. Even if the injunction was still in effect, it would be inequitable to deny to Cooltronic Corporation of America permission to proceed with its Miller Act suit in the United States District Court for the Eastern District of Illinois. Three Miller Act claimants in the same Court were authorized to continue their proceedings there, by order of this Court made during the receivership phase of this case. It seems to me that to deny that opportunity to the present Miller Act claimant would be an abuse of discretion." Petitioner asserts that each of the three suits allowed to proceed was uncontested and that the respective claims involved were clearly valid and for limited amounts.

In addition to the general equity powers reposed in a Bankruptcy Court, section 314 (11 U.S.C.A. § 714) of the Act provides that the Court (which includes the Referee by definition) may stay until final decree "the commencement or continuation of suits other than suits to enforce liens upon the property of the debtor." This relief is expressly made supplemental to that authorized by 11 U.S.C.A. § 29. These broad powers do not arise automatically by the filing of a petition, but may be utilized in the discretion of the Bankruptcy Court. Foust v. Munson Steamship Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49. Such restraints are intended to permit the receiver, upon qualification, to collect and secure possession of the assets, to examine the claims against the debtor, and to hold the assets pending confirmation of the plan of arrangement. See In re Flexton Corporation, 3 Cir., 1954, 217 F.2d 68; In re Neely, D.C.N.Y.1935, 10 F.Supp. 654. Such injunctions are issued in aid of the administration of the estate in bankruptcy, to facilitate the receiver's acquisition of possession of and prevent the interference by others with the debtor's property. In the present case, the order required the receiver appointed thereby to take possession of all property of the debtor. Possession of such property remained in the receiver until title thereto revested in the debtor by the order confirming the plan of arrangement. Confirmation of a plan of arrangement in a Chapter XI proceeding establishes certain legal results set out in § 767, as follows:

"§ 767. Effect of confirmation

"Upon confirmation of an arrangement—

"(1) the arrangement and its provisions shall be binding upon the debtor, upon any person issuing se-

curities or acquiring property under the arrangement and upon all creditors of the debtor, whether or not they are affected by the arrangement or have accepted it or have filed their claims, and whether or not their claims have been scheduled or allowed and are allowable;

"(2) the money deposited for priority debts and for the costs and expenses shall be disbursed to the persons entitled thereto;

"(3) the consideration deposited, if any, shall be distributed and the rights provided by the arrangement shall inure to the creditors affected by the arrangement whose claims are not barred by the provisions of section 754 of this title, and (a) have been proved prior to the date of confirmation and are allowed, or (b) whether or not proved, have been scheduled by the debtor as fixed liabilities, liquidated in amount, and are not disputed; and

"(4) except as otherwise provided in sections 769 and 770 of this title, the case shall be *dismissed.* * * *" (Emphasis supplied.)

■ The effect of such dismissal is to place the debtor back in business on his own feet. Limitations, of course, may be contained in the plan and the Court must retain jurisdiction for such purposes as are established in §§ 369 and 370 (§§ 769 and 770 of the Code). Notwithstand-ing the required statutory retention of jurisdiction, and such as may be set forth in the plan of arrangement, once confirmation is a *fait accompli*, the jurisdiction of the Court is substantially limited.

■ ■ Confirmation of the plan has the further effect of discharging the debtor of his obligations, with the exception of those not dischargeable (11 U.S.C.A. § 35). If a debt is still assertable against the debtor, its assertion may not properly be enjoined after the plan is confirmed and the receiver discharged. Provision is made in § 372 (11 U.S.C.A. § 772) for the inclusion in the final decree of such injunctive relief as may be equitable, and it may be allowed to prohibit the prosecution of suits by creditors whose claims *have* been discharged. Collier on Bankruptcy, Vol. 8, p. 1223. The Referee was correct in ruling that injunction allowed by him in his order appointing the receiver did not outlast the final decree closing the estate, and discharging the receiver. Section 314 specifically states an injunction issued pursuant thereto will have effect only until a "final decree" is entered. The final decree was entered December 16, 1958. It contained no restraint. No petition for review was filed within the time prescribed by 11 U.S.C.A. § 67, sub. c. The order vacating the restraint was therefore properly issued.

An order may be submitted in accordance with the views hereinabove expressed.