**In the Matter of ALLIED DEVELOP-MENT CORPORATION, Alleged Bankrupt.**

**No. BK–65–28.**

United States District Court
W. D. Wisconsin.

Dec. 28, 1965.

On Rehearing April 29, 1966.

Robert W. Smith, Madison, Wis., for receiver.

Don Morris, Madison, Wis., for Stephan & Brady, Inc.

JAMES E. DOYLE, District Judge.

From the Chapter XI petition of the debtor and from the facts as found herein by the Referee, it appears that:

The debtor, Allied Development Corporation (hereinafter referred to as Allied), filed a petition on January 19, 1965 for an arrangement under Chapter XI of the Bankruptcy Act. The petition recites that as of November 30, 1964 Allied's assets were valued by Allied at $3,943,052.03, and its liabilities at $2,783,064.02. Apparently, therefore, debtor was not insolvent on January 19 or on January 29, 1965 within the meaning of the Bankruptcy Act. Sec. 1(19). The receiver does not contend to the contrary.

Stephan & Brady, Inc. (hereinafter referred to as S & B) was listed in said petition as an unsecured creditor. Presumably its claim was one from which a discharge of the debtor in the Chapter XI proceeding would be a release. See Secs. 11, 17. S & B received notice of filing. On January 29, 1965 S & B caused to be docketed in Circuit Court for Dane County, Wisconsin, a judgment on an unsecured cognovit note. It appears that the judgment was entered, without the commencement of an action, as permitted by Sec. 270.69, Wis.Stat. Allied's assets consisted largely of real estate in Dane County, Wisconsin. The judgment entered by S & B is an apparent lien against said real estate. Sec. 270.79, Wis.Stat.

On February 23, 1965 a receiver was appointed for Allied. On March 9, 1965 he petitioned the Referee for an order requiring S & B to show cause why an order should not be entered nullifying the January 29 judgment lien and directing S & B to enter on public records a release of the lien. On March 31, 1965 the Referee held the January 29 judgment and lien void, and ordered S & B to file a release thereof. This order was accompanied by findings of fact and conclusions of law. A petition for review of the March 31 order was filed and certified by the Referee.

Except for its relationship to the Chapter XI proceeding, the validity of S & B's judgment of January 29 is not in issue here. Therefore, its validity in all other respects will be assumed but not decided.

To test the issues raised by the Referee's order of March 31, the matter will first be considered as if the S & B judgment had not been entered according to the summary proceeding permitted by Section 270.79, Wis.Stat., but had instead been entered at the conclusion of the more usual action commenced by the service of a summons (Sec. 262.02, Wis. Stat.) subsequently to January 19, the date on which the Chapter XI petition was filed. Thereafter, it will be determined whether the decision must be modified because the judgment was in fact taken, without action, pursuant to Section 270.79.

No provision of the Bankruptcy Act expressly and automatically stays the commencement of an action by a creditor against the debtor subsequent to the filing of a Chapter XI petition.

Section 314 permits the Referee to enter an order enjoining or staying until final decree in the Chapter XI proceeding the commencement or continuation of suits other than suits to enforce liens upon the property of a debtor. Also, upon notice and for cause shown, the Referee may enjoin or stay until final decree in the Chapter XI proceeding any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor. No such order had been entered prior to the entry of the S & B judgment on January 29.

It is true that Section 314 (in Chapter XI, which governs arrangements) incorporates by reference the provisions of Section 11 (in Chapter III, which relates to straight bankruptcy). But Section 11 provides only for the automatic stay of "[a] suit which is founded upon a claim from which a discharge would be a release, and which is pending against [Allied] at the time of the filing of a petition" by Allied. The S & B judgment of January 29 did not result from a suit pending against Allied as of January 19.

Section 2, sub. a (15) vests the Referee with jurisdiction to "[m]ake such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act." The nature and extent of this jurisdiction will be considered further. For the present, however, it is to be noted that Section 2, sub. a(15) is not automatically operative. In the present case, no order under Section 2, sub. a(15) was sought or obtained prior to the entry of the S & B judgment on January 29.

It is not that in the Bankruptcy Act Congress was unable to formulate language which does effect the automatic stay of post-petition commencement of a

creditor's action. With respect to agricultural compositions, proceedings "for any demand, debt, or account, including any money demand" "shall not be instituted * * * in any court or otherwise, against the farmer or his property, at any time after the filing of the petition under this section * * *." Section 75, subs. o and p. With respect to Chapter XI arrangement proceedings, Congress chose instead to clothe the Referee with discretion whether to stay the commencement of post-petition actions (Section 314), as it did also with respect to railroad reorganizations (Section 77, sub. j), municipal debt adjustments (Section 83, sub. c), corporate reorganizations (Section 116(4)), real property arrangements (Section 414), and wage earner plans (Section 614).

■ It is well settled that the commencement of creditors' actions in other courts is not automatically stayed by the filing of a petition in bankruptcy. 9 Am. Jur.2d, Bankruptcy, Sec. 307, p. 263; United States v. Paddock, 180 F.2d 121, 123–124 (C.A.5th, 1950), cert. den. 340 U.S. 813, 71 S.Ct. 41, 95 L.Ed. 597; In re Lieb Bros., Inc., 198 F.Supp. 229, 231 (D.N.J.1961); Nonotuck Silk Co. v. Pritzker, 143 Ill.App. 644, 648, 650. See Foust v. Munson S. S. Lines, 299 U.S. 77, 83, 57 S.Ct. 90, 81 L.Ed. 49 (1936).

■ Moreover, the Act itself (Section 63, sub. a(5)) includes among debts of a bankrupt which are provable and allowable those "reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge"; no distinction is made between judgments obtained in actions commenced prior to the filing of the petition and judgments obtained in actions commenced after the filing. See Chase v. Farmers' & Merchants' Nat. Bank, 202 F. 904, 905 (C.A.3d, 1913).

Since nothing in the Act automatically stayed a post-petition action by S & B on its note, and since no stay order was sought or obtained prior to January 29 when the S & B judgment was entered, the receiver is obliged to contend and does contend that the Referee is empowered later to invalidate the lien of a judgment which S & B was legally free to enter. It is suggested that such power is inherent in the bankruptcy court (see Section 2, sub. b of the Act); or that it stems from general order-making powers (see Section 2, sub. a(15) of the Act; see also 28 U.S.C., Sec. 1651); or that it stems from the power of the bankruptcy court to allow or disallow claims (see Section 2, sub. a(2)); or that it stems from the bankruptcy court's "exclusive jurisdiction of the debtor and his property" (see Section 311). Whether the source of the power is claimed to be inherent or express, however, the standard for its exercise is stated in Section 2, sub. a(15) which vests the Referee with jurisdiction to "[m]ake such orders * * * as may be necessary for the enforcement of the provisions of this Act." Therefore, the receiver's contention will be measured against the standard of Section 2, sub. a(15). It will be assumed, though not decided, that Section 2, sub. a(15) may be applicable, in some situations at least, to Chapter XI proceedings.

The thrust of the many authorities cited to us by the receiver here is that the bankruptcy court enjoys the power to prevent interference with its control of the property of a bankrupt or of a Chapter XI debtor. This is the insistent, frequently cited theme of International Bank v. Sherman, 101 U.S. 403, 406, 25 L.Ed. 866 (1879) ("The filing of the petition was a *caveat* to all the world. It was in effect an attachment and injunction."). Such language, it is true, has given rise in turn to such sweeping statements as this: "A lien good as against creditors of a bankrupt and his trustee in bankruptcy simply cannot be obtained by legal proceedings, as a general proposition and without regard to Section 67 (a) of the Bankruptcy Act, after filing of the bankruptcy petition." 9 Am.Jur. 2d, Bankruptcy, Section 1035, p. 774. The decisions relied upon as authority for such statements, however, on close examination are found to involve direct interference with the bankruptcy court's

possession or control of the property of the bankrupt or debtor. For example, the authority cited for the statement from American Jurisprudence just quoted is Lazarus, Michel & Lazarus v. Prentice, 234 U.S. 263, 34 S.Ct. 851, 58 L.Ed. 1305 (1914). Lazarus tested the power of the United States District Court for the Eastern District of Louisiana, in an ancillary proceeding and by summary procedures, to obtain possession of $15,000.00 in cash belonging to members of a partnership in bankruptcy in the Southern District of New York. International Bank v. Sherman itself involved the efficacy of a voluntary transfer of certain assets by the bankrupt subsequent to the filing of the petition. Other authorities cited to us deal with attachments, garnishments, execution sales, voluntary transfers and assignments, and similar devices which constitute direct and substantial challenges to the power and ability of the bankruptcy court to deal with the property itself, the *res*. They do not concern themselves with actions *in personam* against the bankrupt or debtor, or with the judgments resulting from such actions.

▆ If it is true that a "lien good as against creditors of a bankrupt and his trustee in bankruptcy simply cannot be obtained by legal proceedings * * * after filing of the bankruptcy petition" (or the Chapter XI petition), there would be no point to the provisions of Section 314, which clearly contemplate that, unless specifically enjoined, actions in other courts against the debtor may be commenced or continued. Since the necessary object of an action is a judgment or order of some kind, and since an attribute of a money judgment is a lien on the real estate of the judgment debtor (Section 270.79, Wis.Stat.), it is clear that the Bankruptcy Act also contemplates the creation of judgment liens after the filing of a Chapter XI petition. See also Section 63, sub. a(5), discussed supra.

▆ The narrow question, then, seems to be whether the lien of a particular judgment, obtained after the filing of the petition, creates a sufficiently critical impediment to the management and control of the debtor's property by the bankruptcy court. The Referee has found as a fact that the lien of the S & B January 29 judgment "constitutes an impediment to the ability, authority and exclusive power of the Received [sic], Ted B. Graim, and this Court, in the Chapter XI proceeding by Debtor especially with respect to the matter of sale and transfer of the real estate assets of Debtor." To test whether this impediment is sufficiently critical, one may inquire whether it would be equally "necessary for the enforcement of the provisions of this Act" to invalidate, and to compel the withdrawal of, the lien of an otherwise valid state court judgment entered, let us say, six months prior to the filing of a Chapter XI petition. The answer is clearly no. The existence of the lien of such a valid six-month-old judgment obviously would create a problem in the administration of the Chapter XI arrangement, but it is a problem with which the bankruptcy court would be obliged to cope. There is no finding here, and apparently could be none, that the S & B judgment lien constitutes an impediment more severe than, or different in character from, the impediment which would have been created by a valid six-month-old judgment lien whose holder simply permits the lien to remain of record.

It is true, as we have seen, that the holder of such a valid six-month-old judgment could be prevented from proceeding independently to enforce his lien against the debtor's property during the Chapter XI proceeding. Section 314. But S & B has not commenced such an enforcement proceeding, nor has it indulged in any other active measure to interfere with the Chapter XI proceeding. Nor is the March 31 order limited to a stay of such supplementary efforts by S & B.

In In re Oceanside Estates, Inc., 84 F.Supp. 114 (E.D.N.Y.1948), heavily relied upon by the receiver here, "a judgment" was entered against a debtor in a

state court six hours after a Chapter XI petition had been filed by the debtor in the bankruptcy court. The debtor was subsequently adjudicated a bankrupt. The court held that the adjudication of bankruptcy related back to the moment of the filing of the Chapter XI proceeding. It held further that the judgment "lien against the property * * * must be nullified"; no statutory authority for this holding is cited in the opinion. It cannot be ascertained from the report whether the judgment was entered in an action which was pending at the time of filing the Chapter XI petition. In that event, Section 11 (as incorporated in Section 314) would have worked an automatic stay.[1] Considering the time gap of six hours, it seems probable that the judgment was entered in an action which was pending at the time of filing the Chapter XI petition. In any event, the only authorities cited in Oceanside are: State Bank of Chicago v. Cox, 143 F. 91 (C.A.7th, 1906), which related the adjudication of bankruptcy back to the date of the filing of the petition for the purpose of permitting the trustee to recover from certain creditors sums which they had *attached* in the interim; In re O'Brien, 78 F.2d 715 (C.A.2d, 1935), involving an agricultural composition which turned on the expressly injunctive statutory language now found in Section 75, sub. o; and Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405 (1902), which involved a wholly irrelevant issue, namely, whether the bankruptcy court might employ a summary proceeding to obtain possession of property of the bankrupt from an agent of the bankrupt. To the extent Oceanside is applicable to the issue here, we decline to follow it.

We have concluded that the impediment of the S & B judgment lien is not sufficiently critical to support the exercise of Section 2, sub. a(15). It remains to consider whether invalidation of the S & B lien is "necessary for the enforcement of the provisions of this Act" in another sense; namely, that the entry of the January 29 judgment clothes the S & B claim with a status which is denied it by other provisions of the Act.

In his conclusions of law, the Referee declared that S & B's status as an unsecured creditor became fixed at the moment of filing of the Chapter XI petition and could not be altered by a subsequent proceeding in another court. No authority is cited for this proposition. In his brief, the receiver undertakes this amplification:

"The drafters of the Bankruptcy Act were fully aware of this point when the Act was drafted and the Act effectively handles it. First, the Act provides in Section 67a for the *nullifying* of all liens obtained within four months prior to the filing of any petition under the Act. Next, Section 311 of the Act protects against liens after the time of filing by taking all the property away from the jurisdiction of all other Courts and placing the property under the *exclusive jurisdiction* of the Bankruptcy Court."

Section 67, sub. a(1) of the Act provides that a judgment lien obtained "within four months before the filing of a petition initiating a proceeding under this Act" shall be deemed null and void: (a) if the debtor was insolvent at the time judgment was entered; or (b) if the judgment lien was sought and permitted in fraud of the provisions of the Act. The presence of factor (b) in the present case is not suggested. Also, as noted above, it is not contended that Allied was insolvent prior to filing its petition January 19, on January 19, or at any time through January 29. Therefore, had the S & B judgment been enter-

---

1. Section 11, sub. a makes the automatic stay effective "until an adjudication or the dismissal of the petition" in bankruptcy. What this time limitation may mean in a Section 322 proceeding for an arrangement under Chapter XI is not clear. However, since no adjudication or dismissal could be forthcoming immediately, it is certain that the stay would have been effective for no less than the six-hour interval involved.

ed at any time prior to the filing of the Allied petition, the lien would not have been null and void. Even if the application of Section 67, sub. a(1) extends to the period subsequent to the filing of the Allied petition, which is doubtful (see In re Engle, 105 F. 893 (E.D.Pa. 1901)), it would not invalidate the S & B judgment lien. Therefore, the nullification of S & B's January 29 lien is not required by the letter or spirit of Section 67, sub. a(1), as the receiver suggests in the passage quoted from his brief. Moreover, the Referee's view that S & B's status as an unsecured creditor necessarily became fixed as of January 19 is, as we have seen, inconsistent with Section 314 which contemplates that independent actions may, unless enjoined, be commenced or continued to judgment.

█ This brings us to the final question, noted early in this opinion but reserved for later disposition: Is it material to a decision that the S & B judgment was obtained without the commencement of an action by virtue of the telescoped procedure permitted by Sec. 270.69, Wis.Stat.?

If, after the filing of Allied's petition under Chapter XI, an action had been commenced in the usual manner (in Wisconsin, by the service of a summons or of a summons and complaint, Section 262.02, Wis.Stat.), the debtor Allied or the receiver or perhaps another creditor might have sought a stay either from the state court in which the action had been commenced or from the bankruptcy court. This might have been done during the period of 20 days (or more) within which a defendant must answer or demur (Sections 262.10, 263.05, Wis.Stat.). With respect to a judgment note, or a cognovit note as it is sometimes called, no similar interval occurs, and no advance notice of entry of the "confessed" judgment is given to the debtor, or to the debtor's Chapter XI receiver, or to other creditors. The practical difficulty arises from this absence of notice.

Faced with this difficulty in the relationship between the apparent scheme of the Bankruptcy Act, on the one hand, and the eccentricity of the summary Section 270.69 procedure, on the other, one of two alternative rules is required.

One rule would place upon the petitioning debtor, or upon other creditors, in a Chapter XI proceeding the burden promptly to seek the injunctive order permitted by Section 314. This may be a rather severe burden upon other creditors unfamiliar with the exact nature of the debtor's obligations. It seems not unreasonable with respect to the debtor itself, however, which is aware that it has executed one or more judgment notes, to which the Section 270.69 procedure is applicable.

The other alternative is simply to amend Section 314 judicially, by adding language to this effect: "After the filing of a petition under this Chapter XI, no judgment may be entered against the debtor in any court without notice to the debtor, the receiver, and the other creditors, sufficient to permit them to apply to the court in which the judgment is sought or to the bankruptcy court, or to both such courts, for an order enjoining the entry of said judgment."

The judicial surgery required by the latter alternative is too radical. The S & B judgment of January 29 must stand.

For the reasons given and upon the basis of the entire record herein, it is hereby ordered that the Referee's order of March 31, 1965, be, and the same is hereby, overruled and set aside.

### On Rehearing

█ In his motion to amend the order entered herein on December 28, 1965, which motion is considered as a motion for rehearing, the receiver crystallizes and amplifies his contention. His contention rests upon Section 311 of the Bankruptcy Act and its implications. Section 311 reads:

"Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have ex-

clusive jurisdiction of the debtor and his property, wherever located."

From this language, the receiver reasons that no one can obtain a lien of any kind against the debtor's property while it rests within this "exclusive jurisdiction" of the bankruptcy court. The argument is supported by the statement and development of practical considerations which we acknowledge to be forceful. It is also supported by a contention, which we will not spell out here, that acceptance of the receiver's view would give a logical symmetry and balance to the Act, as it applies to judgments taken before the filing of the petition and those taken subsequently.

After careful consideration, we are obliged to persist in the view that acquiescence in the receiver's contention requires surgery upon the statute beyond this court's power to perform.

The essence of the receiver's contention is that, by conferring upon the bankruptcy court "exclusive jurisdiction" of the debtor's property, Section 311 renders such property invulnerable to siege which may be laid against it outside the bankruptcy court. However, Section 314 makes plain that no such automatic shield is raised by the filing of a Chapter XI petition. Indeed, the holder of a preexisting lien may go so far as to foreclose it in another forum and to have the debtor's property sold unless, on notice and for cause shown, he is specifically restrained from doing so. The Congress in Section 314 also made it explicit that despite the "exclusive jurisdiction" of the bankruptcy court over the property of the debtor, a creditor was free to commence and to prosecute a suit against the debtor in another forum, unless specifically restrained. Thus the only issue concerns the attributes of a judgment obtained by a creditor in such a suit. Since the Congress considered that, unless specifically restrained, the holder of a pre-existing lien should be free to exercise complete dominion over the property of the debtor despite the "exclusive jurisdiction" of the bankruptcy court, it is difficult to understand why by reason of this "exclusive jurisdiction" a judgment properly obtained by a creditor should be shorn of its otherwise normal and familiar quality as a lien against the debtor's property. It cannot be supposed that the Congress was unaware that judgments obtained in the courts of many states constitute liens upon the real property of the judgment debtor. See, for example, Illinois Revised Statutes (1963), ch. 77, sec. 1; Code of Iowa (1962) secs. 624.23, 624.24; Missouri Revised Statutes (1959), sec. 511.350; Page's Ohio Revised Code Annotated (1964 Supplement), sec. 2329.02; Deering's 1961 Code of Civil Procedure of the State of California, sec. 674.

For the reasons given, the receiver's motion to amend the order entered herein on December 28, 1965, has been denied.