In the Matter of **AMERICAN HOME FURNITURE CO. OF PITTSBURGH,** t/d/b/a Misco, the Famous and Pittsburgh Mercantile Co., and P. L. Edwards Co., United Mills (Ind.), Inc., Mutual Industrial Sales Co. and Misco, Inc., its wholly owned subsidiaries.

No. 66–122.

United States District Court
W. D. Pennsylvania.

Jan. 26, 1967.

Saul Davis, Pittsburgh, Pa., for petitioner, Simon Silverman.

Robert A. Jarvis, Pittsburgh, Pa., for trustee of bankrupts.

## OPINION AND ORDER

MARSH, District Judge.

This matter is before the court on petition of respondent, Simon Silverman, for review of an order of the Referee in Bankruptcy made on September 29, 1966, which ordered Silverman forthwith to turn over and deliver to the Trustee in Bankruptcy of American Home Furniture Co. of Pittsburgh (American), and its subsidiaries, "six motor vehicles which belong to the bankrupt estates, together with the certificates of title thereto." We think the order of the Referee should be affirmed.

On April 11, 1966, American and its subsidiaries filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. The debtors were permitted to remain in possession and operate their businesses. Further proceedings were referred to the Referee.

In American's Statement of Affairs, United Credit Corp. (United) was listed as a secured creditor holding securities valued at $376,551.01 on a loan of $111,-750.[1] Schedule B–2–J disclosed that personal property owned by American, inter alia, included an undisclosed number of trucks and autos. For the personal property the schedule noted a depreciated value of $376,551.01 subject to a security loan of $111,750.

The respondent was obligated as a principal and guarantor on this loan to United (T., pp. 120, 139).

On April 29, 1966, American presented a petition to the Referee requesting authorization to sell certain of its personal property which was subject to liens in favor of United. The petition set forth that American and its subsidiaries were indebted to United in the sum of $111,-750 and accrued interest, and as security for the obligation, United held, inter alia:

"A properly recorded security interest in all Petitioner's personal property other than stock-in-trade (Petitioners' equipment) wherever located".

Paragraph (5) of the order signed by the Referee stated:

"Petitioners are authorized to sell equipment and fixtures covered by the financing statements to United Credit Corporation. Such sales may be made at prices agreeable to Petitioners and to United Credit Corporation. The proceeds from such sales shall be paid over to United Credit Corporation on account of its obligation due from Petitioners. No notice to creditors need be given to effectuate such sales."

This order was consented to by United. The petition and order contained no reference to motor vehicles.

There was testimony that United's financing statements covered all equipment owned by the debtor, including motor vehicles (T., pp. 127–128). The financing statements were not introduced into evidence.

Prior to June 23, 1966, United consented to the sale of the six motor vehicles to the Silverman family for $5,000 (T., pp. 129–130).

On June 23, 1966, pursuant to a petition of the debtors, signed by their president, Simon Silverman, an order was entered adjudging them bankrupt. H. D. Hirsh was appointed Receiver.

On the same day, upon receipt of a cashier's check in the sum of $5,000, delivered to United by Harold Cohen, United's attorney, Rex Rowland, Esq., delivered the certificates of title to the six motor vehicles to Cohen and released United's lien on each certificate. These certificates (respondent's Exs. 1–6) show that the owner of the six motor vehicles is American. Cohen brought the certificates to American's office where Simon Silverman, as president of American, executed and acknowledged

1. See Schedule A–2.

assignments on each and returned them to Cohen (T., pp. 103–108). Prior to bankruptcy the vehicles were in the possession of the employees of the debtor corporations including Simon Silverman and his sons (T., p. 114). Simon Silverman gave to Mr. Cohen $2,100 towards the $5,000 paid to United (T., p. 107); his sons, Edward and Paul, contributed the remainder (T., pp. 119–120, 130).[2]

In the foregoing manner, Simon Silverman and members of his family attempted to purchase the six motor vehicles owned by American and liened to United (T., pp. 98–99, 106, 119–120).[3] Simon Silverman was president of the debtor corporations; his sons, Edward and Cecil, were officers; his son, Paul, was General Merchandising Manager and Buyer (T., p. 93); and Harold Cohen, his son-in-law, was Operations Manager of American (T., p. 104).

Neither Simon Silverman nor Harold Cohen informed Mr. Rowland, United's attorney, that American was to be adjudicated a bankrupt on the very day that Cohen delivered to him the $5,000 check and received possession of the now unencumbered certificates (T., pp. 130–131). Rowland believed the sale of the vehicles was being made pursuant to the order of April 29, 1966.

At no time did Simon Silverman inform the attorneys for the debtors or the attorney for the debtors in possession that he and members of his family proposed to purchase American's motor vehicles, although on the date he executed both the petition requesting bankruptcy and the assignments of the certificates of title, he conferred with them (T., pp. 100–102).

■ Section 70(a) of the Bankruptcy Act, 11 U.S.C.A. § 110(a), provides that a trustee in bankruptcy is vested "by operation of law" with the title of the bankrupt as of the date of the filing of the petition to described kinds of property. Section 70(a) (5). Therefore, it is clear that as of June 23, 1966, the Act vested title to American's motor vehicles in the Trustee. Although the order of April 29, 1966, did not specifically authorize the sale of American's motor vehicles, even if we would construe the term "equipment" to include them, that order was functus officio as of June 23rd, the date the debtor corporations were adjudicated bankrupts.

■■ Section 70(d) (5), 11 U.S.C.A. § 110(d) (5), provides, with exceptions not relevant here, that "no transfer by or in behalf of the bankrupt after the date of bankruptcy shall be valid against the trustee". In our opinion, the transfers of the certificates of title and the motor vehicles from American to the Silverman family on June 23rd are invalid and of no effect against the title of the Trustee. As was stated in Mueller v. Nugent, 184 U.S. 1, 14, 22 S.Ct. 269, 275, 46 L.Ed. 405, "the filing of the petition [in bankruptcy] is a *caveat* to all the world, and in effect an attachment and injunction". We think the adjudication and receivership on June 23rd began the bankruptcy administration, and Simon Silverman, with actual knowledge thereof, and the members of his family had no further right to meddle with the motor vehicles, title to which on that date was vested in the Trustee. Furthermore, Simon Silverman's procurement of the certificates of title from United's attorney on June 23rd without informing him of the imminent bankruptcy of American was not a good faith transaction. As president of the debtors in possession, he had a trustee's obligation to inform United's attorney that the debtor corporations were to be adjudicated bankrupts on that day. Also, as president, we think he had an obligation to inform the attorneys for the debtors and the attorney for the debtors in pos-

---

**2.** "The balance of the $5,000.00 paid to United was contributed by other members of the Silverman family." See respondent's requested finding of fact No. 18.

**3.** "The six motor vehicles are in the possession of various members of the Silver-

man family, and it was intended that each Certificate of Title be transferred to the possessor of the particular vehicle." See respondent's requested finding of fact No. 16.

session, with all of whom he was in communication on June 23rd, that he and his family were purchasing American's motor vehicles. We fail to perceive any equity in favor of the respondent which should serve to defeat the Trustee's title.

Respondent complains that he may not be able to recover the $5,000 from United if the turnover order stands. We think respondent has only himself to thank for any difficulties he may encounter in this respect.

The original certificates of title are in the possession of the respondent's attorney, Saul Davis, Esq. (T., p. 148).[4]

Since no title passed to Harold Cohen, or to the respondent, or to the other members of the Silverman family on June 23, 1966, the Trustee is entitled to have the six certificates of title and the six motor vehicles turned over and delivered to him.

We think the learned and experienced Referee correctly decided the case.

---

4. See also, respondent's requested finding of fact No. 28.