## Commonwealth v. Vazquez

*Jill A. Devine,* for plaintiff.
*Matthew R. Gover,* for defendant.

DOWLING, *J.,* June 28, 1990 — On May 15, 1986, defendant Luis Vazquez Sr., filed a petition for bankruptcy in the United States Bankruptcy Court. Lawrence Frank, Esq. was appointed trustee under a Chapter 7 plan. Although Mr. Frank made an attempt to sell the real property involved, located at 1408-1430 Vernon Street, Harrisburg, in June 1988, the sale did not go through.

From October 1988 to November 1989, Harrisburg City Codes Enforcement Officer Charles Berry inspected the Vernon Street property on various

occasions and found several violations of the Harrisburg City Codified Ordinances. Notices were sent, by certified mail, return receipt requested, to the defendant — but not to Mr. Frank — demanding that the assorted violations — which included windows unsecured against entry, broken window glass, and loose exterior brick — be corrected.

On January 23, 1990, a six-alarm fire destroyed the Vernon Street buildings, leaving 69 people homeless and doing extensive property damage in the area. Plaintiff contends that the fire occurred primarily because of defendant's failure to secure his property, as requested in the citation. The certified mail notices had been sent to defendant's last known address, where they were signed for by one Wanda Lamos, whose exact relationship, if any, to the defendant is unclear. On March 14, 1990, District Justice Michael Stewart found defendant guilty of violating the Harrisburg City Codified Ordinances, on the counts set forth in the earlier notices, sentenced him to 90 days in jail, and fined him $1,000 for each violation. Mr. Vazquez has appealed his summary convictions to the court.

Defendant argues that his 1986 bankruptcy filing relieves him of any responsibility for maintaining the buildings, according to code standards, during the pendency of the estate in bankruptcy. He further contends it acted as an automatic stay to all judicial proceedings against him, or the property, for the term of its existence, and that the city ordinances' definition of "ownership" (under which he, defendant, would still be viewed as the "owner of record," and thus as responsible) must yield to the view set forth in federal bankruptcy law, under which the debtor is no longer considered to be an effective owner.

64

The Commonwealth responds that the automatic stay provisions do not apply to "an action or proceeding by a governmental unit to enforce such governmental units' police or regulatory power." 11 U.S.C.S. §362(b)(4). It further contends that no duty to abate City Code violations attaches to a bankruptcy trustee, since this duty is not to be equated with the preservation of the estate and that this remains the owner/debtor's responsibility.

We do not subscribe to defendant's contention that a Chapter 7 bankruptcy proceeding acts as a stay against an action such as the one in the case at bar. A municipality's or state's police powers, which encompass the need to protect the public health and safety, would be greatly impaired if such were the case. Such a view would allow persons, properties and social conditions to become virtual equivalents of the notorious Typhoid Mary, who insisted that her desire to work as a food handler was her inalienable right as a citizen, irrespective of the fact that she was also a carrier of the typhoid fever virus — with the result that her proud exercise of individualism resulted in the spread of a dread disease.

While the right to file the citations was not affected by the bankruptcy, both the responsibility for maintenance and the capacity to be sued shifted from the title property owner to the trustee in bankruptcy.

The language of the cases construing section 362, relied upon by the Commonwealth, do not support its position in bringing the action against Mr. Vazquez. In the case of *Cournoyer v. Town of Lincoln,* 790 F.2d 971 (1st Cir. 1986) — which was a Chapter 11 proceeding, not a Chapter 7 — there was no trustee against whom the plaintiff could have proceeded until after the action was commenced. This, of course, bears no relationship to the

scenario in the case at bar, where the trusteeship antedated the action by over two years. In *People of the State of Illinois v. Electrical Utilities,* 41 Bankr. 874 (D.C. 1984), on the other hand, the bankruptcy petition itself was not filed until after the action was commenced — the reverse of what happened in this instance.

We would add that the single strand of the Commonwealth's reasoning that has found the least favor with us is the assertion that there is a distinction between a duty to preserve the estate and a duty to abate code violations. If a trustee is to sell a piece of realty, it has to be both habitable and in conformance with the applicable city regulations.

Also, we are troubled by what seem to be procedural irregularities with this case. The certified receipt card for the notices of the code violation was signed for, not by defendant, but by Wanda Lamos. There is not a clear indication of just who she is in relation to Mr. Vazquez. The testimony of Mr. Berry on this point is not entirely reassuring:

*By Mr. Gover:*

Q: And the person who signed for this, Wanda Lamos, do you have any knowledge whether she knows Mr. Vazquez?

A: I do not.

Q: Do you have any knowledge whether she communicated these citations to Mr. Vazquez?

*Ms. Devine:*

A: I do not.

It is well established that the filing of a petition in bankruptcy is a caveat to all the world, and is, in effect, an attachment and an injunction. Bankr. Act. §70, sub.d(5), 11 U.S.C. §§110(d)(5); *In re American Home Furniture Co. of Pittsburgh,* 265 F.Supp. 345 (D.C. Pa. 1967). It is likewise a first

principle that title to the bankrupt's property vests in the trustee.

In the instant case, there is no indication that there was any attempt, on the city's part, to check public sources of information regarding the status of the realty (such as the bankruptcy court records) other than the title and tax assessment records for local real estate. While we would be able to understand a governmental entity being less than thorough in its research if the time span involved were a matter of hours or days, we are, in the instant case, dealing with a period of one year and four months — the period from the date of the first code violation notice to the date of the fire. With no response or action at all on this matter from the putative defendant during this time, it is not unreasonable to ask why no further attempts to elucidate the status of this realty were undertaken. Indeed, as far as anyone on plaintiff's side might have deduced from the available evidence, Mr. Vazquez could have died in this interim, and Ms. Lamos have been his executrix.

The Commonwealth should, it seems to us, have at least considered the specific possibility that a bankruptcy filing could account for this inaction. If bankruptcies were as relatively rare as they used to be, this might not be the case, but, in an era like our own, where every major urban area (and our fair state capital is, we regret to say, no exception) is pockmarked with literally hundreds of abandoned and decaying properties whose "owners of record" are in bankruptcy, this is not so remote a possibility that it should escape consideration by our municipal authority. If, as Mr. Berry testified, the necessary information about city properties in bankruptcy "[is] not listed on the [computer] screens" that are used for these research purposes, we would suggest that the person or persons charged with programming

those units be instructed to expand their data input to include this all-too-typical area of what might be called "the reality of realty" in the 1990s.

Accordingly, we enter the following

## ORDER

And now, June 28, 1990, the appeal is sustained, and defendant is found not guilty.